Donald E. RYAN, Petitioner-Appellant,

v.

STATE OF MONTANA,
Respondent-Appellee.

No. 76–2518.

United States Court of Appeals,
Ninth Circuit.

Aug. 22, 1978.

Richard N. Dinallo (argued), of O'Gara & O'Gara, San Francisco, Cal., for petitioner-appellant.

J. Mayo Ashley, Deputy Atty. Gen., Helena, Mont., for respondent-appellee.

Before CARTER, KENNEDY and ANDERSON, Circuit Judges.

KENNEDY, Circuit Judge:

This appeal requires us to determine whether or not a state is required to grant a probationer immunity from use of testimony he gives at a combined probation revocation and deferred sentencing hearing at a time when he is under criminal indictment for the same act that constitutes the alleged probation violation.

Petitioner, Donald E. Ryan, was convicted on three counts of grand larceny in a superior court of the State of Montana on July 27, 1973. The court placed Ryan on probation and deferred imposition of sentence for one year. On July 8, 1974, when only nineteen days of Ryan's probationary term remained, the state charged that Ryan had committed a subsequent theft, thus violating the terms of his probation. The charge was that Ryan had stolen a type-

writer from a bus terminal in Billings, Montana. The state moved to revoke Ryan's probation and to impose sentencing for the 1973 convictions, and in addition it indicted petitioner for the subsequent theft. His trial on that charge was still pending during the probation and deferred sentencing hearing.

At the revocation-sentencing proceeding, Ryan moved for a continuance until after his trial on the criminal charge. This motion was denied. The state called witnesses at the hearing to prove the violation, and they were cross-examined by defense counsel. The petitioner declined to testify in his own behalf, asserting that his testimony might incriminate him in the subsequent criminal proceeding. Petitioner was not offered immunity from use of his testimony at the subsequent trial, and at oral argument before this court respondent conceded that state law would not permit such immunity. The state trial court found Ryan in violation of the deferred sentence agreement, revoked his probation, and imposed three concurrent terms of ten years imprisonment. Thereafter the criminal charge for the typewriter theft was dismissed on motion of the state.

Ryan appealed the judgment entered in the revocation proceeding to the Supreme Court of Montana. He argued there, as he does here, that he had been denied due process by being forced to elect to remain silent and risk probation revocation and sentencing, or to speak in his own defense and risk incriminating himself on the criminal charge. The Supreme Court of Montana rejected petitioner's claim on the theory that his dilemma involved a strategic choice which did not offend the constitution. *State v. Ryan*, 166 Mont. 419, 533 P.2d 1076 (1975). His state remedies exhausted, Ryan filed a petition in federal district court for a writ of habeas corpus. The district court summarily rejected the petition for the reasons stated in the Montana Supreme Court's opinion. Ryan appeals from the decision of the district court, and we affirm.

■ Absent compulsion, it is not unconstitutional for the state to secure a conviction by using a statement made by the accused. *See Hoffa v. United States*, 385 U.S. 293, 303–04, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The definition of compulsion may present a difficult question, however, and the principal issue in this case is whether Montana's procedures for probation revocation and deferred sentencing subjected Ryan to compulsion of the sort forbidden by the self-incrimination clause of the fifth amendment.[1] We find the state did not compel Ryan to testify or put him to an unconstitutional election.

The Supreme Court has ruled that testimony is compelled in a manner forbidden by the purpose and intent of the self-incrimination clause when the state requires testimony under threat of certain noncriminal sanctions. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) (cancellation of state contracts and bar from future contracts for five years for refusal to waive fifth amendment privilege when called to testify concerning state contracts); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) (discharge from police force for failure to waive privilege against self-incrimination, without immunity, before grand jury); *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (statements made under threat of discharge from police force for refusal to answer held to be involuntary); *see Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (plurality opinion of four justices) (disbarment based on lawyer's refusal to produce records which were presumed to be protected by the privilege against self-incrimination). These cases, which find compulsion in sanctions that are removed by one step at least from a direct compulsion to testify in a criminal case, have been reaffirmed in the recent case of *Lefkowitz v. Cunningham*,

---

1. The case making the self-incrimination clause of the fifth amendment applicable to the states through the fourteenth amendment due process clause is *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). The guidelines which *Cunningham* provides for determining when impermissible compulsion has been exerted control our decision in this case.

In *Cunningham*, a New York state statute required persons holding office in a political party to testify before a grand jury about matters related to their official duties. Party officers were forced to waive immunity from use of such grand jury testimony in any later prosecution on pain of removal from office and disqualification from holding any public or party office for five years thereafter. The Court held that the statutory scheme compelled testimony in violation of the fifth amendment because it imposed disabilities for failure to execute a waiver of use immunity. The Court emphasized that by asserting his privilege against self-incrimination the defendant forfeited a powerful and sought-after position, lost the economic benefit of potential future employment, and was deprived of certain associational rights guaranteed by the first amendment. *Id.* at 807–08, 97 S.Ct. 2132.

■ The probation revocation and sentencing procedures used by Montana do not involve the kind or degree of compulsion which the Court found inherent in the *Cunningham* situation. The *Cunningham* Court confined its holding to situations where "refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions." *Id.* at 808 n. 5, 97 S.Ct. at 2138. On this basis the Court distinguished *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), where it was held permissible to draw a negative inference from a prisoner's refusal to testify in a prison disciplinary hearing, even though he was not entitled to immunity from use of his testimony or its fruits at a subsequent criminal trial. *Id.* at 317–19, 96 S.Ct. 1551. As in *Baxter*, Ryan's decision whether or not to testify was a

strategic choice. No sanction followed automatically from his exercise of the privilege to remain silent. Rather, the absence of exculpatory information which Ryan might have furnished if he had decided to testify "was only one of a number of factors" which might figure in the probation revocation and sentencing determinations. *See Cunningham*, 431 U.S. at 808 n. 5, 97 S.Ct. at 2138. Indeed, Ryan was under even less disadvantage in deciding to withhold his testimony than was the petitioner in *Baxter*, since it is not contended that an inference of guilt was or could have been drawn from Ryan's silence at the probation revocation hearing.[2]

The State of Montana did not institute probation revocation proceedings for the purpose of eliciting testimony. In this respect, too, Ryan's case is distinguishable from *Cunningham*, where the clear purpose of the New York statute was to force a political party official to make self-incriminating statements. There is no indication that Montana initiated the proceeding without adequate evidence to support the probation violation charge, or that the proceedings were otherwise a cover for an investigation directed solely toward obtaining information to be used in a subsequent criminal trial. Such a misuse of the probation revocation process would be impermissible under *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975), where we stated:

> [U]nder no circumstances should cooperation between law enforcement officers and probation officers be permitted to make the probation system "a subterfuge for criminal investigations." *See Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975).

*Id.* at 267. Thus we do not find that Ryan was under the sort of direct compulsion to testify that *Cunningham* and the cases on which it relies found unconstitutional.

---

**2.** The extent to which the self-incrimination privilege applies at all when a probationer testifies at a combined revocation-sentencing hearing is a question left open by our decision in *United States v. Segal*, 549 F.2d 1293, 1299 (9th

Cir.), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977), and since Montana does not assert that any adverse inferences may be drawn from the petitioner's silence, we do not face the precise question here.

As a general proposition, the courts do not favor procedural rules which require an individual to sacrifice one constitutional right as the price of preserving another. *See, e.g., Cunningham*, 431 U.S. at 807–08, 97 S.Ct. 2132; *Simmons v. United States*, 390 U.S. 377, 389–94, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). But there are circumstances, even at criminal trials, when requiring a defendant to make a difficult strategic choice which necessarily results in relinquishing a constitutional right is both legitimate and, from a self-incrimination standpoint, noncompulsive. The Supreme Court permitted the state to put the defendant to such an election in *Crampton v. Ohio, sub nom. McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), *vacated on other grounds*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972) (hereinafter referred to as *McGautha*). There the defendant was afforded a single trial in which the jury was to determine guilt and fix punishment at death or life imprisonment. The defendant argued that he was constitutionally entitled to a bifurcated trial so that he might remain silent in the guilt determination phase and testify on his own behalf in the punishment phase. Under the single trial-single verdict proceeding, if he elected to testify to matters pertaining to punishment there was a danger that his statements or the inquiry into sensitive areas of his testimony on cross-examination might affect the determination of his guilt. In effect, the right to remain silent on the issue of guilt was conditioned on surrendering the opportunity to testify in an attempt to mitigate punishment. *Id.* at 210–11, 91 S.Ct. 1454. While recognizing that the defendant in that case faced a grave and difficult choice, the *McGautha* Court held that the choice was analogous to others which are routinely faced by criminal defendants at trial, and that it was neither compulsive with respect to the privilege against self-incrimination nor in any other sense unconstitutional.

Both this case and *McGautha* differ from *Cunningham* in that no sanction or punishment results automatically from exercise of the privilege, and in this respect impermissible compulsion is lacking. The rationale of *McGautha* controls our result here. The *McGautha* Court reached the conclusion that it was not constitutionally impermissible to require the hard strategic choice demanded of the defendant in that case after determining that the state procedure did not "impair[ ] to an appreciable extent any of the policies behind the rights involved." *Id.* at 213, 91 S.Ct. at 1470. Following that analysis, we do not find that the policies of the privilege against self-incrimination or the policies behind allowing a probationer to be heard at a probation revocation and sentencing hearing are significantly impaired by the Montana procedure.

 We have held that on the scale of due process protection, combined probation revocation and deferred sentencing hearings fall somewhere between a criminal trial on one hand, and on the other, a hearing where sentence has been imposed and the sole issue is revocation of probation or parole. *United States v. Segal*, 549 F.2d 1293, 1296 (9th Cir.), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977). This conclusion follows from an analysis of Supreme Court decisions, particularly *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). While certain procedural rights must be afforded in a probation revocation and deferred sentencing hearing, they are not intended to create a rigid and overly formal proceeding. The right to confront and cross-examine adverse witnesses is not absolute in such a proceeding and may be curtailed if the hearing officer finds good cause for not allowing confrontation. *Gagnon*, 411 U.S. at 786, 93 S.Ct. 1756; *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593. Illegally-seized evidence may usually be admitted against the probationer, *State v. Thorsness*, 165 Mont. 321, 528 P.2d 692 (1974); *see United States v. Vandemark*, 522 F.2d 1019 (9th Cir. 1975); *United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975), and the hearing officer may consider hearsay evidence, such as that includ-

ed in the report of a probation officer. *United States v. Miller,* 514 F.2d 41 (9th Cir. 1975) (per curiam). Although the procedural requirements of a probation revocation and sentencing hearing are less stringent than those of a criminal trial, they are intended to protect interests which are similar to those at stake in a criminal proceeding, *viz.,* the integrity of the fact-finding process and the accuracy of the assessment of what sanction is appropriate. *Gagnon,* 411 U.S. at 782–84, 93 S.Ct. 1756; *Morrissey,* 408 U.S. at 479–80, 92 S.Ct. 2593. The necessity of waiving the privilege against self-incrimination in order to testify on matters going to guilt or innocence, *see Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958) (defendant who takes the stand cannot claim privilege against cross-examination as to matters reasonably related to subject matter of direct), or to mitigation of punishment, *see McGautha, supra,* is not an impermissible imposition on the policy which allows a criminal defendant to be heard in his own defense. We cannot think, then, that the policies behind the due process right to be heard are significantly impaired by a similar disability at a probation revocation and sentencing hearing, where less procedural protection is generally warranted.

Nor are the policies behind the privilege against self-incrimination impaired to an appreciable extent by the Montana procedure. The *McGautha* Court has held that a procedure which allows statements made by a criminal defendant in an effort to mitigate his responsibility and reduce his punishment to be used against him as evidence of his guilt or innocence is not a cruel choice which implicates the self-incrimination clause of the fifth amendment. Forcing a defendant to assume the risk that statements he makes at a probation revocation and sentencing hearing will be used against him at a subsequent criminal trial does not appear to be any more harsh than the choice faced in *McGautha,* and it does not constitute compulsion in the context of the fifth amendment.

Ryan would have us require the state to afford him immunity from use at a subsequent criminal trial of testimony he might give at the probation-sentencing hearing and from use of the fruit of that testimony. The fact that Ryan's statements made in the course of the probation revocation hearing might possibly be used against him in a subsequent criminal proceeding, *State v. Ryan,* 166 Mont. 419, 533 P.2d 1076 (1975), does implicate "the balance of forces between the accused and his accuser," in the second proceeding. *See Wardius v. Oregon,* 412 U.S. 470, 474, 476, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973). However, use immunity is unnecessary to preserve this balance, since, as previously stated, our rule forbidding use of the parole or probation system as a subterfuge for a criminal investigation, *United States v. Consuelo-Gonzalez,* 521 F.2d 259 (9th Cir. 1975), eliminates the possibility that the probation revocation and sentencing hearing might be used as a device to coerce discovery. This safeguard blunts any disadvantages associated with the decision to testify in the probation proceeding.

It is not unreasonable for the state to attempt to revoke probation without first proceeding with a full scale criminal trial on the subsequent offense. Even if the state were required to hold the criminal trial before the revocation proceeding, collateral estoppel does not protect one who has been acquitted of the crime from having to relitigate that charge in a revocation proceeding. *Standlee v. Rhay,* 557 F.2d 1303 (9th Cir. 1977). The efficiency of the probation revocation process may be deemed by the state to be the best and most effective means for removing a recalcitrant criminal from society, since it eliminates the far more costly procedure of a criminal trial for the subsequent offense. *See Morrissey,* 408 U.S. at 479, 92 S.Ct. 2593.

The benefits to be obtained from holding a revocation proceeding after criminal trial are not so overwhelming that we can feel confident in embodying that alternative as part of a constitutional rule. To mandate that a criminal trial be held before, or in conjunction with, a probation revocation proceeding might delay the disposition of

the probationer's case. Delay of revocation proceedings until after a trial on the second criminal charge might disadvantage the accused if evidence becomes stale or a witness is unavailable. Moreover, in some circumstances the accused might find it advantageous to know the status of his sentence on the initial criminal charge so that if he is tried on the second charge the court can consider imposing a concurrent sentence. *See Melson v. Sard*, 131 U.S.App.D.C. 102, 103, 402 F.2d 653, 654 (1968).

The First Circuit, in a decision by a divided panel, has reached a result consistent with ours. *Flint v. Mullen*, 499 F.2d 100 (1st Cir.) (per curiam), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974). *See also State v. Randall*, 27 Or.App. 869, 557 P.2d 1386 (1976); *Gonsalves v. Howard*, 113 R.I. 544, 324 A.2d 338 (1974). The District of Columbia Circuit, in a case where it had direct appellate jurisdiction over the criminal processes in question, did reach a result that appears contrary to ours on the constitutional question, holding that testimony given in the probation revocation hearing could not be introduced in a subsequent criminal proceeding. *Melson v. Sard*, 131 U.S.App.D.C. 102, 402 F.2d 653 (1968). However, the *Melson* decision was rendered before the Supreme Court decisions in *McGautha, Baxter,* and *Cunningham*, all of which we find to be controlling here.[3]

■ If our opinion as to the wisdom of the Montana rule were dispositive, we might prefer the California procedure, mandated by the state court under its supervisory power, which provides use immunity for a probationer's testimony if it is given at a revocation hearing held prior to trial on criminal charges which were the basis for the revocation proceeding. *People v. Cole-*man, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024 (1975) (en banc). It is not unreasonable to conclude that the lesser standard of proof at a revocation proceeding and the objectives of making an accurate determination of revocation charges and a proper assessment of the penalty to be imposed are factors that make it proper for a state to encourage testimony by a grant of use immunity. For the reasons set forth above, however, we cannot accept the argument that these considerations require use immunity as a constitutional doctrine. Our jurisdiction is not to supervise Montana's system of criminal justice, but rather to say whether or not it complies with the requirements of the Constitution. We do not find the state has violated the Constitution by following the procedures in question here.

AFFIRMED.

---

**3.** Even *Melson v. Sard* did not require a probation revocation hearing to be held after a criminal trial. The court concluded that the initial revocation hearing did not substantially undermine the appellant's opportunity to make an adequate defense. The court there stated:

We decline, however, to grant relief from appellant's second objection—that a pretrial hearing will force him to tip his hand in advance of trial and consequently reveal a portion of his defense strategy. Although appellant may necessarily have to divulge a part of his defense, this is offset by his ability to learn much of the Government's case against him. Certainly there is enough merit in the achievement of greater mutual pretrial discovery in criminal cases that we cannot condemn such a consequence as one which the court must resolutely forbid.

131 U.S.App.D.C. at 104, 402 F.2d at 655 (footnote omitted).