**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rickey Dean SIMMONS,
Defendant-Appellant.**

No. 84–3095.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 9, 1987.[*]

Decided March 12, 1987.

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

George F. Darragh, Jr., Great Falls, Mont., for plaintiff-appellee.

Rickey Dean Simmons, Springfield, Mo., Stephen C. Becker, San Francisco, Cal., for defendant-appellant.

Before ANDERSON, HUG and CANBY, Circuit Judges.

HUG, Circuit Judge:

Rickey D. Simmons appeals the revocation of his probation.[1] The district court found that Simmons had failed to cooperate with the psychiatric program mandated by his probation. Simmons's appeal raises several due process concerns: (1) Did Simmons have the right to confront and cross-examine adverse witnesses at the revocation hearing? (2) Did Simmons receive adequate notice that his conduct was proscribed by the terms of his probation? Simmons's pro se brief also challenges the underlying conviction which led to his probation.

## FACTS

On November 21, 1983, a person identifying himself as Bill Tabor telephoned the Secret Service and said that Rickey D. Simmons wanted to kill President Ronald Reagan. A Secret Service agent subsequently determined that Bill Tabor was, in fact, Rickey D. Simmons. Simmons later admitted threatening the President to attract attention to his problems with the Veterans Administration ("VA"). At the time of these threats, Simmons was in Deaconness Hospital Psychiatric Ward. Simmons has been diagnosed a paranoid schizophrenic.

Simmons was indicted and entered into a plea agreement with the Government. By the terms of the agreement, Simmons pled guilty to threatening to kill the President

---

1. Simmons's court-appointed counsel filed a brief, pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that he saw no issues of arguable merit for direct appeal. Simmons filed a pro se brief.

After conducting an independent review of the record on appeal, this court directed the parties to file supplemental briefs addressing the issues discussed in this opinion.

of the United States in violation of 18
U.S.C. § 871 (1982). In exchange, the
Government agreed:

> That, at sentencing itself, the U.S. Attorney shall affirmatively recommend to the
> Court that the Defendant receive not
> more than a five (5) year suspended sentence, with the requirement that Defendant, for the purposes of psychiatric care
> and treatment, voluntarily commit himself *to the institution of his choosing,*
> and that he not remove himself from
> such institution, save and excepting upon
> discharge by his attending or supervising
> psychiatrist....

(Emphasis added.) Subsequently, arrangements were made for Simmons's admission
to the VA Hospital at Sheridan, Wyoming,
and sentence was imposed in accordance
with the Government's recommendation.[2]

Seven days after arriving at the VA Hospital, the United States Probation Office
for the District of Montana filed a petition
seeking revocation of Simmons's probation.
The grounds for revocation were his refusal to cooperate with the treatment program
recommended by the psychiatric staff and
his threats to leave the facility.

The district court held a hearing on July
9, 1984, and concluded that Simmons had
violated the terms and conditions of his
probation. This conclusion was based on a
two-page patient summary prepared by
Simmons's attending physician and a twopage "Report of Contact" summarizing
Simmons's contact with his treatment team
at the VA Hospital. After reviewing the

transcript of the sentencing hearing, the
court also determined that Simmons had
adequate understanding of the probation
terms.[3] Simmons was then committed to
the custody of the Attorney General for
five years.

## DISCUSSION

### I. *Challenges to the Underlying Conviction*

■ In addition to challenging the probation revocation, Simmons challenges the
guilty plea which led to probation. He
argues that the plea was coerced because
he was denied medical care and treatment
while in the custody of the United States
Marshal's Office after his arrest. Irrespective of the merits of this claim, an appeal
from a probation revocation is not the proper avenue for a collateral attack on the
underlying conviction. *United States v.
Lustig,* 555 F.2d 751, 753 (9th Cir.1977),
*cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54
L.Ed.2d 796 (1978). The conviction may be
collaterally attacked only in a separate proceeding under 28 U.S.C. § 2255, and a
court should consider the petition for probation revocation as if the underlying conviction was unquestioned. *Id.; see also
United States v. Torrez-Flores,* 624 F.2d
776, 780–81 (7th Cir.1980); *United States
v. Francischine,* 512 F.2d 827, 828–29 (5th
Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct.
284, 46 L.Ed.2d 261 (1975).

---

**2.** The district court's Judgment and Commitment stated:

> The execution of said sentence of imprisonment is to be suspended and defendant placed
> on probation for a period of five (5) years
> upon the defendant's voluntary commitment
> to the Veterans Hospital, Sheridan, Wyoming.
> The defendant's probation shall be subject to
> the following terms and conditions:
>
> . . . . .
>
> 3. That he voluntarily commit himself for
> mental health treatment at the Veterans Hospital, Sheridan, Wyoming, and complete the
> psychiatric treatment program as recommended by the psychiatric staff.

**3.** The district court noted, in particular, the following exchange at the sentencing hearing:

> THE COURT: ... and that is to state that
> the judgment of the court is that you are

remanded to the custody of the Attorney General for a term of five years, and that five
years then is suspended, and you are placed
on probation for this five-year period, and the
only condition on the probation is that you
successfully complete the course of treatment
that is ordered for you by the Veterans Administration at Fort Sheridan; is that right?
Do I have that accurate?

> MR. BARRON: That's correct.
> THE COURT: And you have agreed to that,
> Mr. Simmons?
> MR. SIMMONS: Yes.
> THE COURT: And you realize that a violation of that condition would be sufficient to
> violate the probation?
> MR. SIMMONS: Yes, Your Honor.

## II. *Right to Confront and Cross-Examine*

Simmons challenges the use of VA Hospital records at the revocation hearing. He contends that their use was a denial of his right to confront and cross-examine the individuals who prepared these records. At the outset, we note that Simmons did not object to the admission of these documents at the revocation proceedings. Therefore, our inquiry is limited to whether the denial of confrontation and cross-examination constituted "plain error." Fed.R. Crim.P. 52(b); *United States v. Kupau,* 781 F.2d 740, 742–43 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986). Under this standard, there must be a "highly prejudicial error affecting substantial rights." *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court held that the confrontation clause, as incorporated by the due process clause of the Fourteenth Amendment, requires probationers and parolees to have some right to confront and cross-examine adverse witnesses. They possess the right unless the hearing officer specifically finds good cause for not allowing confrontation. *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604; *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1761. At the same time, however, the revocation proceeding is not to be equated with a criminal prosecution. Less process is due at a revocation hearing, and that process must be flexible enough to allow the court to consider documentary evidence that may not meet usual evidentiary requirements. *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604; *Gagnon,* 411 U.S. at 789, 93 S.Ct. at 1763. The Court did not "intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Gagnon,* 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5.

The cases thus delineate a process of balancing the probationer's right to confrontation against the Government's good cause for denying it. In particular, good cause may arise from the "difficulty and expense of procuring witnesses." *Id.* Our cases also suggest that the reliability of evidence may provide a basis for its admission. In *United States v. Miller,* 514 F.2d 41 (9th Cir.1975), we found no violation of probationer's confrontation rights by the admission of unauthenticated copies of state court criminal records.[4] Although the records were hearsay, the probationer had not challenged their accuracy and the court found them sufficiently reliable. *Id.* at 42–43; *see also United States v. Garcia,* 771 F.2d 1369, 1372 & n. 3 (9th Cir.1985) (noting the court's emphasis on reliability); *Ryan v. Montana,* 580 F.2d 988, 992–93 (9th Cir.1978), *cert. denied,* 440 U.S. 977, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). Other circuits agree that hearsay evidence may be admissible in probation revocation hearings. *See, e.g., United States v. McCallum,* 677 F.2d 1024, 1026–27 (4th Cir.), *cert. denied,* 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982); *Prellwitz v. Berg,* 578 F.2d 190, 191–93 (7th Cir.1978); *United States v. Pattman,* 535 F.2d 1062, 1063–64 (8th Cir.1976).

In this case, the district court admitted copies of hospital records prepared by Simmons's attending physician and a Release of Information Clerk.[5] In light of the traditional indicia of reliability that these records bear, *see McCormick on Evidence* § 313, at 882–85 (E. Cleary ed. 1984); *United States v. Sackett,* 598 F.2d 739, 742 (2d Cir.1979); *Medina v. Erickson,* 226 F.2d 1296 (9th Cir.), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977).

---

4. *Miller* involved the denial of confrontation at a combined revocation and sentencing hearing. This case involves only probation revocation. Nonetheless, the argument for the use of reliable hearsay is even stronger in a revocation hearing, in which the probationer is entitled to less due process than at a combined hearing. *See, e.g., United States v. Segal,* 549 F.2d 1293,

5. The custodian of records for the hospital certified that the records were true copies of records prepared and maintained in conjunction with the treatment of Simmons.

475, 482–83 (9th Cir.1955), *cert. denied*, 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956), and the diminished procedural protections which attach to a probation revocation proceeding, we cannot say that the admission of these records and the denial of Simmons's opportunity to confront and cross-examine the hospital personnel was plain error.

### III. *Fair Notice of Proscribed Conduct*

■ A district court has broad discretion to revoke probation when its conditions are violated. *United States v. Dane*, 570 F.2d 840, 843 (9th Cir.1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978). However, the district court's discretion has limitations, and this court has authority to review revocation decisions for fundamental unfairness or an abuse of discretion. *Id.; United States v. Hamilton*, 708 F.2d 1412, 1414 (9th Cir.1983). As noted, the loss of liberty entailed in the revocation of probation is a serious deprivation requiring the district court to accord due process to the probationer. *Gagnon*, 411 U.S. at 781–82, 93 S.Ct. at 1759; *Morrissey*, 408 U.S. at 481–82, 92 S.Ct. at 2600. An essential component of these due process rights is that individuals be given fair warning of acts which may lead to revocation. *Dane*, 570 F.2d at 843.

■ Generally, formal conditions of probation provide notice of proscribed activities. A court also may impute knowledge when the violation is a criminal act. *Id.* at 844. But when, as here, the proscribed acts are not criminal, due process requires that the probationer receive actual notice. "[T]he record must be closely scrutinized to determine whether the defendant did, in fact, receive the requisite warning." *Id.* Therefore, unless Simmons received prior fair warning that his acts could lead to revocation, the district court's revocation violated due process and was an abuse of discretion. *See, e.g., United States v. Grant*, 807 F.2d 837, 838–39 (9th Cir.1987) (failure to pay a $20,000 fine could not be used to revoke probation because it was not made a formal condition of probation and the district judge did not expressly associate payment with rehabilitation); *Hamilton*, 708 F.2d at 1415 (probationer did not have adequate notice of reporting requirements since prior probation officer had not enforced them); *United States v. Foster*, 500 F.2d 1241, 1243–44 (9th Cir. 1974) (probationer's failure to maintain contact with probation department could not be predicate for revoking probation because probationer had not been informed that he was obliged either to report to probation department or to advise them of change of address); *United States v. Chapel*, 428 F.2d 472, 474 (9th Cir.1970) (noncriminal acts of protest against Selective Service while on probation for draft offenses could not be used to revoke probation for failing "to obey all laws," when conditions themselves provided inadequate notice).

Our inquiry in this case must begin with the conduct which led to the revocation of Simmons's probation. The district court found that Simmons had "refused to cooperate with the treatment program recommended by the psychiatric staff at the Veterans Hospital and threatened to leave that facility." The hospital records relied on by the court recounted that Simmons told staff members he did not want to stay at the VA Hospital, but wanted to transfer to a "private hospital." After being told that he would have to complete whatever treatment plan the VA Hospital designed for him, Simmons insisted that the court would understand his desire to leave. Simmons subsequently met with his treatment team and made clear his intention to go to another institution. At no time, however, did Simmons try to leave the VA facility.

The VA Hospital at Sheridan, Wyoming, is an "open" facility. There are no walls, fences, or guards. Consequently, patients can voluntarily leave the facility. Simmons made no such efforts.

■ We are not convinced that Simmons was informed adequately that the conduct outlined above would result in the revocation of his probation. Simmons believed he had the right and option to leave the VA Hospital and commit himself to a private

psychiatric institution.[6] He believed that the extent of his obligation was not to leave the facility without permission. The district judge was not required to believe Simmons, but disbelief is not a substitute for affirmative evidence that Simmons was informed that the instant conduct was proscribed by his probation. *Foster*, 500 F.2d at 1244. In fact, the district judge gave support to Simmons's understanding with his own remarks during the sentencing hearing:

> THE COURT: I think we made clear last time, but I want to be clear to you now that [the VA Hospital] is an open situation. There are no fences or guards and things like that; is that right?
>
> THE DEFENDANT: Yes. They do have VA police to protect.
>
> THE COURT: They are there to protect the hospital?
>
> THE DEFENDANT: Yes.
>
> THE COURT: But you can leave if you choose to do so. You can walk away?
>
> THE DEFENDANT: It is a voluntary open hospital.
>
> THE COURT: I want to be clear if you should choose to do that, that should be sufficient to violate the terms of this probation, if you do that before they say you are ready to leave.

It was made clear that leaving without an official discharge would violate Simmons's probation. There was no indication that "threatening" to go to another institution would violate that probation.

We also believe that the ambiguity between the plea agreement and the final sentence and probation may have contributed to Simmons's understanding of his probation conditions. The original plea agreement recited that Simmons would "voluntarily commit himself to the *institution of his choosing*, and that he not remove himself from such institution, save and excepting upon discharge by his attending or supervising psychiatrist." (Emphasis added.) It was only after Simmons entered the plea that the district court worked out arrangements for Simmons's admission to the VA Hospital at Sheridan, Wyoming. The district court understood this to mean that once Simmons *chose* an institution, he could not leave until discharged by the psychiatric staff. Simmons obviously believed he could later "choose" another institution as long as he had the approval of his attending physician.

Under the circumstances, we do not believe this was an unreasonable understanding. The Judgment and Commitment required that Simmons "complete the psychiatric treatment program as recommended by the psychiatric staff." Taken literally, the probation terms allow the psychiatric staff to "recommend" Simmons's transfer to another institution. Indeed, this was also the understanding of Simmons's attending physician, Dr. Murphy, who wrote: "I expect the patient to be discharged, or more likely, transferred to another hospital. . . ." Simmons's own conduct also gives support to this conclusion. He never attempted to leave. He testified that he knew that Dr. Murphy's approval would be necessary.

Additionally, Simmons's probation officer never warned him that threats or insistence on leaving would result in revocation of his probation. We recognize that "[i]n addition to the bare words of the probation condition, the probationer may be guided by the further definition, explanations, or instructions of the district court and the

---

**6.** Simmons testified as follows:

Well, I never said I wanted to leave, actually get up and leave. . . . I said if I did leave and go to another hospital I would want to make sure it was okay for the doctors and my probation officer. . . . [T]he next day, they called me in and asked me if I was aiming to leave, and I told them no—I said I was thinking about maybe going to a private hospital and see if I needed long-term or short-term treatment. There were three people in the meeting that I can remember, Dr. Murphy, Dr. Will Banks and the head nurse of the unit, and they told me: "It is our understanding that you either be here at this hospital or go into the federal prison." Said that I had no choice of any other hospital. I said I couldn't see it that way, because I said as long as my probation officer—it was okay with him and okay with the doctor, I could be transferred to a private hospital and receive treatment.

probation officer." *United States v. Romero,* 676 F.2d 406, 407 (9th Cir.1982); *see also United States v. Bonanno,* 452 F.Supp. 743, 755 (N.D.Cal.1978), *aff'd,* 595 F.2d 1229 (9th Cir.1979). However, Simmons was only at the facility one week. At no time did his probation officer provide such a warning.

Probation programs are a valuable component of our criminal justice system. The decision to place a defendant on probation represents a conclusion that the defendant will benefit from supervision and treatment conceived to help that individual become a constructive member of society. Accordingly, the Supreme Court has held that the decision to revoke that probation should not be undertaken lightly. *Gagnon,* 411 U.S. at 785, 93 S.Ct. at 1761; *Morrissey,* 408 U.S. at 479–80, 92 S.Ct. at 2599. It should be taken "only as a last resort when treatment has failed or is about to fail." *Gagnon,* 411 U.S. at 785, 93 S.Ct. at 1761. In light of the failure to notify Simmons initially, or to warn him subsequently that the instant conduct was proscribed by the terms of his probation, we cannot conclude that such restraint was shown here.

## CONCLUSION

We find that Simmons was not provided adequate notice of the terms of his probation. Therefore, we vacate the district court's order revoking his probation and instruct the court to reinstate Simmons's probation.

VACATED and REMANDED.