BREYER, Senior District Judge,
dissenting:
Today the majority affirms an illegal sentence while acknowledging that “the sentence imposed was clearly erroneous,” Majority Op. at 1067, and offers no practical remedy to correct the wrong. I cannot concur in an opinion that upholds clear error, and therefore respectfully dissent.
There is no disagreement that the district court’s 2011 sentence of probation coupled with imprisonment was erroneous. This Court has held that such a sentence is illegal, as it exceeds the statutory authority granted by Congress. 18 U.S.C. § 3561(a)(3); United States v. Forbes, 172 F.3d 675, 676 (9th Cir.1999). Nor is there *1073 an issue as to whether the Defendant lawfully waived a challenge to an illegal sentence at the time of his plea. Again, this Court has wisely held, along with many of its sister circuits, that appellate courts must reject such a waiver if to enforce it would result in the affirmance of an illegal sentence. See United States v. Bibler, 495 F.3d 621, 624 (9th Cir.2007).[1]
So then what is the rationale supporting an affirmance in this case? The majority relies on two cases discussing remedies, and then offers a wrongly sentenced defendant two options, neither of which make sense.
As an initial matter, the majority is correct that the district court had jurisdiction over the Defendant for purposes of a motion to revoke probation. However, that there was jurisdiction misses the point: the district court clearly exceeded its statutory authority on two occasions. First, the district court erred by imposing an illegal term of probation in 2011. Second, the district court erred in 2013 by revdking probation and thereupon imposing a sentence of confinement. The Defendant appeals here from the district court’s second error. That the district court had jurisdiction does not correct the plain error committed in 2011 and again in 2013. Plain error is for a reviewing court to correct, but apparently not here.
The majority contends that the appellate remedy chosen by the Defendant is barred by controlling Ninth Circuit precedent, and cites United States v. Gerace, 997 F.2d 1293 (9th Cir.1993), and United States v. Simmons, 812 F.2d 561 (9th Cir.1987), to that effect. Majority Op. at 1068-69. Neither case is on point.
Both Gerace and Simmons involved collateral attacks on underlying convictions based on factors wholly outside the scope of probation revocation proceedings. Neither case involved a claim of lack of statutory authority like the one here. In Gerace, the appeal did not challenge the district court’s imposition or revocation of probation. Rather, as the very first sentence of that opinion makes clear, “Ge-race argue[d] that he [wa]s entitled to a new sentencing hearing or to withdraw his plea of guilty because the government breached a plea agreement.” Gerace, 997 F.2d at 1293. Here, Defendant seeks neither a new sentence nor to withdraw his plea; he simply challenges the authority of the district court to revoke his illegally imposed probation.
To the extent Gerace establishes the broad holding that “[a]n appeal challenging a probation revocation proceeding is not the proper avenue through which to attack the validity of the original sentence,” id. at 1295 (citing Simmons, 812 F.2d at 563), it does so relying entirely on Simmons. Simmons, like Gerace, considered an appeal seeking to withdraw a guilty plea. See Simmons, 812 F.2d at 563 (“Simmons challenges the guilty plea which led to probation.”). The holding in Simmons on which Gerace relies is clear: “an appeal from a probation revocation is not the *1074 proper avenue for a collateral attack on the underlying conviction.” Id. That the opinion in Gerace recited the holding more broadly as “[a]n appeal challenging a probation revocation proceeding is not the proper avenue through which to attack the validity of the original sentence” is of no moment in light of the facts of those cases.[2] It bears repeating: both Simmons and Gerace considered an appeal seeking to withdraw a guilty plea.[3] Here, Defendant seeks no such thing. There is no dispute that the imposition of a term of probation and a term of imprisonment violated 18 U.S.C. § 3561(a)(3). Faced with a clearly erroneous sentence, the majority suggests that Defendant should have “moved to correct the underlying sentence under 28 U.S.C. § 2255” or that defense counsel should have “move[d] to vacate, amend, or correct the [2011] sentence.” Majority Op. at 1067. These two proposed remedies ignore the realities of this case.
Defendant was an alien who had conceded his removability as part of the 2011 plea agreement. Defendant’s 2011 custodial sentence was for two months time served with the remainder of a six month sentence stayed. This means that Defendant would have been released from custody and transferred to immigration custody immediately after sentencing on September 19, 2011. The time Defendant spent in immigration custody would have been extraordinarily brief.[4] For example, the median time spent by defendants in immigration custody prior to a removal in Fall of 2012 (including people who did not concede removability) was 10 days, with 40 percent of aliens spending three days or less in immigration detention prior to their removal.[5] See TRAC Immigration, Legal Noncitizens Receive Longest ICE Detention (2013), available at http://trac.syr.edu/ immigration/reports/321/ (compiling data from the U.S. Immigration and Customs Enforcement agency’s removal statistics available at http://www.ice.gov/removalstatistics/index.htm).
The majority suggests that the Defendant could have filed a petition for habeas corpus relief under 28 U.S.C. § 2255 or that he could have moved to correct his sentence, presumably under Fed. R.Crim. Proc. 35. Majority Op. at 1067-68. These remedies are impractical for three related reasons: (1) futility; (2) timeliness; and (3) mootness. First, it would have been futile to file a Rule 35 motion to correct the sentence or a habeas petition under § 2255 with the same “court which im *1075 posed the sentence.” 28 U.S.C. § 2255(a). Even if Defendant had filed a Rule 35 motion or a § 2255 petition, the district court almost certainly would have denied relief. The district court continued to believe, even two years later, that the Ninth Circuit was wrong and that the district court was right: “I do continue to disagree that after imposing a time-served sentence, I was foreclosed from putting him on probation. I think probation was a legal’sentence.” It is wishful thinking to suggest that the district court would have changed its mind in 2011 in the context of a Rule 35 motion or a habeas petition when the same judge explicitly stated two years later that he still believed the clearly erroneous sentence was lawful. Such a motion would have been futile.
Second, it would have been difficult, if not impossible, for Defendant to timely file either a motion to correct his sentence or a habeas petition, even had his counsel noticed the error.[6] Rule 35(a) states that “Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.” Fed. R.Crim. Proc. 35(a). “This and other circuit courts have held that the fourteen-day deadline is jurisdictional, thus divesting the district court of the power to amend the sentence after fourteen days.” United States v. Aguilar-Reyes, 653 F.3d 1053, 1055 (9th Cir.2011). Thus, the district court would only have had jurisdiction to consider the remedy the majority suggests, a Rule 35 motion to correct the sentence, for fourteen days after the imposition of sentence.[7] Moreover, the Defendant was deported the day after the erroneous sentencing. See note 4„ supra. Once Defendant was removed and no longer represented by a federal defender, surely there was no way, nor reason why, he would have filed a pro se motion or habeas petition from abroad. As the majority points out, Defendant would have just “one year from ‘the date on which the judgment of conviction becomes final’ to bring a motion under § 2255.” Majority Op. at 1071 quoting § 2255(f)(1). In other words, by the time Defendant was taken into custody in the United States in 2013, both the fourteen-day Rule 35 window and the one-year habeas window had long since closed. Thus, it is difficult to see how Defendant could have timely availed himself of either of the remedies the majority suggests.[8]
*1076 Finally, once the Defendant was removed froni the country, the day after the district court committed its plain error at sentencing, any attempt to correct the error likely would have been denied as moot.[9] The only harm improperly imposed on Defendant was the illegal term of probation. The imposition of probation would not “continue to present a live controversy after the petitioner’s release or deportation,” Abdala v. I.N.S., 488 F.3d 1061, 1064 (9th Cir.2007), until and unless he reentered the United States. As long as Defendant was in Mexico, the imposition of probation, albeit illegal, was moot and the case or controversy requirement could not have been satisfied where, as here, the Defendant does not “continue[] to suffer actual collateral consequences.” Zegarra-Gomez v. I.N.S., 314 F.3d 1124, 1127 (9th Cir.2003). Thus, even if defense counsel had realized the error and timely filed a motion to correct or a habeas petition, the relief sought was moot unless and until Defendant reentered the country. The majority seems to suggest that a habeas petition would allow the federal courts to provide prospective relief in the face of uncertain, speculative future harm. Surely it is in the interests of judicial economy and consistent with the well-es- ■ tablished doctrine of justiciability for Defendant to have waited to challenge the illegality of the term Of probation until the harm from that sentence became real.
Nor is the majority persuasive in suggesting that this Court lacks a “source of authority pursuant to which we may rule on the validity” of the imposition of punishment after the revocation of Defendant’s probation. Majority Op. at 1071. “The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts.” 28 U.S.C. § 1291. An order revoking probation is a final judgment subject to appeal under 28 U.S.C. § 1291. See, e.g., United States v. Vasquez, 160 F.3d 1237 (9th Cir.1998) (reviewing the imposition of punishment upon a revocation of probation pursuant to 28 U.S.C. § 1291). This Court has jurisdiction and with jurisdiction comes a source of authority to correct the clear error in this case.
What happened in this case is analogous to.the following hypothetical. A removable alien defendant is convicted of a Class C felony and sentenced to a five-year term of supervised release in violation of 18 U.S.C. § 3583 which clearly prohibits a term of supervised release greater than three years for a Class C felony. The defendant has no incentive to file a habeas petition or a direct appeal, either of which could require him to spend months in custody awaiting a disposition or to litigate an effectively moot habeas petition seeking prospective relief for an as yet unrealized harm. In fact, the illegal sentence would only impact the defendant if he is apprehended within the United States during the fourth or fifth year of supervised release. During the first three years, the imposition of supervised release was lawful. After the fifth year, the illegal portion of the supervised release would have expired. Thus, there would be a narrow window of time during which the illegal sentence might possibly prove detrimental to the defendant, but challenging the sentence outside of that window would ensure the defendant spend longer in custody or waste judicial resources resolving a moot habeas petition. In these circumstances, *1077 no effective counsel would challenge or move to correct the illegal sentence until the defendant entered the United States and was apprehended during the two year window and the prospective harm became concrete.
In 2012, the more than 6,000 criminal cases with an illegal reentry charged in district courts within this Circuit accounted for more than 29 percent of all criminal defendants in the Circuit. United States Courts for the Ninth Circuit, 2012 Annual Report 65 (2013), available at http://www. ce9.uscourts.gov/publications/AnnualReport2012.pdf. Unlike almost all other criminal eases, people convicted of immigration violations are, "with few exceptions, deported upon completion of their sentences. Therefore, it is essential that judges follow the law in imposing sentence. That did not happen here, as the majority admits. This appeal presented an entirely appropriate remedy to correct the error upon the revocation of probation in 2013. The majority chose to ignore it, under a flawed analysis of precedent. Therefore, I cannot concur in the judgment.[10]

. See also United States v. Andis, 333 F.3d 886, 891-92 (8th Cir.2003) ("[A] defendant has the right to appeal an illegal sentence, even though there exists an otherwise valid waiver.”); United States v. Thornsbury, 670 F.3d 532, 539 (4th Cir.2012) ("We have indeed used the term ‘illegal’ to describe sentences the appeal of which survive an appellate waiver, but we have done so only where the sentence is alleged to have been beyond the authority of the district court to impose.”); United States v. Teeter, 257 F.3d 14, 25 & n. 10 (1st Cir.2001) (holding that courts should refuse to honor the waiver if the district court plainly errs in sentencing); United States v. Polly, 630 F.3d 991, 1001 (10th Cir. 2011) (stating that a waiver would be enforced unless it would result in "a miscarriage of justice”); United States v. Soon Dong Han, 181 F.Supp.2d 1039 (N.D.Cal.2002) (Breyer, J.) (discussing problems with prospective, open-ended waivers).

. Nor are the out-of-circuit cases the majority cites on this point persuasive. None of the cases involved either (1) the defendant’s removal from the country, or (2) a clearly erroneous sentence. Moreover, illegal reentry cases present unique circumstances which inform defense counsel’s judgment as to whether the harm of an illegal sentence is speculative as it depends on a future event, and when appellate review is appropriate in light of the potential for additional time in custody.

. The language the majority relies on from Gerace, unsurprisingly, comes from the section of the opinion discussing Gerace’s contention that the district court judge, in changing Gerace’s sentence, violated Rule ll’s prohibition against court participation in plea negotiations. Gerace’s argument on appeal was that the court’s participation rendered the plea agreement invalid, thereby rendering his conviction invalid. In that sense, because Gerace was challenging the validity of his conviction, the court appropriately relied on Simmons. Here, Defendant is explicitly not challenging the validity of his conviction, nor could he. His conviction was valid, but his sentence was not.

. In fact, although not part of the record on review before this Court, immigration records confirm that Defendant was removed from the country on September 20, 2011.

. In 2013, for example, Defendant was released from federal criminal custody on January 27, 2014 and removed from the country by immigration enforcement on the same day.

. The sentence imposed "was plain error, which was not waived by the failure of counsel to object at the time of sentencing." United States v. Lawton, 193 F.3d 1087, 1089 (9th Cir. 1999) superseded in part on other grounds as recognized in United States v. Tapia, 665 F.3d 1059, 1063 (9th Cir.2011).

. While there was much discussion over whether the district court had jurisdiction to revoke Defendant’s probation in 2013, it is beyond dispute that the district court did not have jurisdiction to correct its illegal sentence pursuant to a Rule 35 motion after the fourteen-day window had closed. Aguilar-Reyes, 653 F.3d at 1055.

. A third potential remedy is filing a notice of appeal from the sentencing or the denial of the hypothetical Rule 35 motion in 2011; that again makes no sense. If filed, Defendant would already have been removed. See note 4, supra. It is difficult to ' understand the incentive to file a notice of appeal, unless Defendant was contemplating, at the time of his removal, an illegal return to the United States and his subsequent apprehension.
Also, such a remedy would have necessitated substantial delays. The median time from filing a notice of appeal to a final disposition in this Circuit was 17.4 months in 2011. U.S. Court of Appeal-Judicial Caseload Profile-Ninth Circuit Court of Appeals (2012), available at http://www.ce9.uscourts.gov/statistics/ appeals_court.pdf. Meanwhile, the median prison term imposed on a person convicted of an immigration offense in 2011 in this Circuit was 15 months, meaning half of all people convicted of an immigration offense served less- than 15 months in custody. United States Sentencing Commission, Statistical information Packet Fiscal Year 2011 Ninth Circuit 10 (2011), available at http://www.ussc. gov/Data_ancLStatistics/FederaLSentencing_ *1076 Statistics/State_District_Circuit/201 l/9c 11. pdf.

. While this Court has held that a sentence "of probation meet[s] the ‘in custody’ requirement for section 2255 jurisdiction,” United States v. Span, 75 F.3d 1383, 1386 n. 5 (9th Cir.1996), here there was no actual harm until and unless Defendant returned to the United States.

. Because this court should have reversed and corrected the clear error below, the panel need not have reached the issue of whether the imposition of a term of supervised release was an abuse of discretion. However, having reached the issue, I agree that the district court did not abuse its discretion in imposing a term of supervised release even though Defendant was a deportable alien. The application note to Guideline § 5D 1.1(c) makes clear that a court may impose supervised release on a removable alien "if the court determines it would provide an added measure of deterrence.” The record indicates that Defendant’s family is in Mexico. Thus, the imposition of supervised release served as an added deterrent to reentry because a violation of supervised release would result in a longer separation from Defendant's family than would a conviction for another reentry alone.