UNITED STATES of America,
Plaintiff–Appellee,

v.

Lonnie G. SCHMIDT, Defendant–
Appellant.

No. 95–10440.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 1996.

Decided Oct. 29, 1996.

Matthew C. Bockmon, Assistant Federal Public Defender, Sacramento, CA, for defendant-appellant.

Daniel S. Linhardt, Assistant United States Attorney, Sacramento, CA, for plaintiff-appellee.

Before: BOOCHEVER, JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

The district court found that Lonnie G. Schmidt ("Schmidt") violated the terms of his supervised release and probation by failing to turn over financial records requested by his probation officer. The district judge sentenced Schmidt to 90 days in jail for the probation violation and a concurrent sentence of one year and one day for the supervised release violation. Schmidt appeals, and we affirm.

On April 12, 1990, Schmidt received a sentence later reduced to a 33 month prison term and to a consecutive three-year term of supervised release, for conspiracy to impede and impair the Internal Revenue Service ("the Supervised Release Case"). The fraud involved selling "putative trusts" in unincorporated business organizations, which he in turn used to help others fraudulently conceal income and assets. This prison term expired on June 25, 1992.

On September 6, 1990, Schmidt was sentenced to four years in jail and to a five-year term of probation for conspiracy and failure to file currency transaction reports ("the Probation Case"). This conviction again centered on a conspiracy to defraud. Schmidt, acting as a financial institution, converted cash into cashier's checks and failed to report transactions involving substantial sums of money. This practice allowed his clients to evade the notice of the Internal Revenue Service. Schmidt's prison term for these offenses expired on April 20, 1993.

On November 8, 1994, Schmidt's probation officer filed a petition for warrant or summons for alleged supervised release violations, including failure to provide requested financial information. The district court held a hearing on May 18, 1995, to determine whether Schmidt had committed the alleged violations.

According to the probation officer, Schmidt claimed that he earned a salary of approximately $2,000 per month from April 1993 through December 1993 working as a manager at Jack London Graphics. The only address that Schmidt ever provided for Jack London Graphics was his own home address. Schmidt was also the person who signed and issued his salary checks from Jack London Graphics.

At the revocation hearing, Schmidt explained that much of the money he reported earning from Jack London Graphics was actually money he received from prisoners he helped as a paralegal. Schmidt said that he had placed the money in the Jack London Graphics account because he had no other account available. Schmidt had not previous-

ly mentioned his work as a paralegal to the probation officer.

In response to a pre-hearing request made by his probation officer, Schmidt refused to provide his telephone records, citing his family's first amendment rights. He also did not provide the probation officer with personal financial records or those relating to Jack London Graphics. Schmidt asserted that his boss at Jack London Graphics, Ron Anderson, refused to turn over the requested business records on advice of. counsel. Anderson, however, never appeared to support Schmidt's assertion.

On August 29, 1995, the district court found that Schmidt violated the terms of his supervised release by failing to turn over financial records requested by the probation officer. On October 3, 1995, the probation officer indicated that he still did not know what Schmidt was doing and therefore could not perform his duties. The district court then revoked Schmidt's term of supervised release and sentenced Schmidt to jail for one year and one day.

### 1. *The Jurisdictional Challenges*

■ "Jurisdiction is a question of law subject to *de novo* review." *United States v. Neville,* 985 F.2d 992, 994 (9th Cir.), *cert. denied,* 508 U.S. 943, 113 S.Ct. 2425, 124 L.Ed.2d 646 (1993).

### A. *Jurisdiction to Revoke Probation*

■ Because Schmidt has completed his 90–day sentence for the probation violation, we first consider whether his appeal is moot. If an imposed sentence "may have collateral consequences for a defendant in any possible future sentencing, the appeal from such a sentence, even if already served, is not moot." *United States v. Dickey,* 924 F.2d 836, 838 (9th Cir.), *cert. denied,* 502 U.S. 943, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991). While the 90–day sentence cannot have a direct effect on any future sentence imposed on Schmidt in federal court, it could indirectly affect a future sentence. The federal Sentencing Guidelines account for criminal history in determining appropriate sentence ranges. Section 4A1.2 (k) of the Guidelines instructs that "[i]n the case of a prior revoca-

tion of probation ... add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points...." In this case, Schmidt's underlying sentence of 33 months already warrants the maximum of three points allocated to a single sentence of imprisonment exceeding one year and one month. *See* U.S.S.G. § 4A1.1(a). The 90 days added to that sentence will not change the number of criminal history points assessed. A future district court may, however, weigh the revoked probation and resulting sentence against Schmidt when deciding discretionary issues such as where within the applicable range a sentence should fall. Likewise, a future state court may be permitted to consider the sentence when imposing a new term of imprisonment.

We conclude that in accordance with the *Dickey* criterion, Schmidt's appeal from the 90–day sentence for probation violation is not moot. Schmidt's argument, however, fails on the merits.

Schmidt argues that no warrant or summons was issued prior to the expiration of his term of probation, and consequently the district court lacked jurisdiction to revoke his probation pursuant to 18 U.S.C. § 3565(c). Section 3565(c) permits a court to revoke a term of probation after that term has expired only if, prior to that expiration, a warrant or summons has been issued on the basis of an alleged violation of a condition of the probation. 18 U.S.C. § 3565(c). We reject Schmidt's argument because the requirements of section 3565(c) were satisfied.

On September 6, 1990, Schmidt was sentenced to a five-year term of probation. The term of probation therefore was not due to expire until September 6, 1995. Because the district court revoked Schmidt's term of probation on October 3, 1995, one month after the sentence of probation expired, the district court had to comply with the conditions of section 3565(c). As noted above, section 3565(c) permits a court to revoke a term of probation after that term has expired only if, prior to the expiration, a warrant or summons has been issued on the basis of an

alleged violation of a condition of the probation.

■ Schmidt contends that no warrant or summons was issued because the district court file contains no such document. Although no·such document is in the district court file, de novo review of the district court record reveals that a summons was issued as required by 18 U.S.C. § 3565(c).

On October 3, 1994, almost one year before Schmidt's term of probation was due to expire, Schmidt's probation officer filed a petition for warrant or summons for alleged probation violations. On October 12, 1994, the district judge ordered that a summons be issued. The docket sheet reflects that on October 18, 1994, a summons was issued for Schmidt to appear for a hearing on November 8, 1994. The district court minutes and the reporter's transcript reflect that Schmidt was present for the hearing held on November 8, 1994 and that he denied the alleged probation violations. At the hearing, Schmidt also acknowledged receipt of the petition for summons filed by Schmidt's probation officer.

Based on this evidence, we find that a summons was issued on October 18, 1994, almost one year before the term of probation expired on September 6, 1995. Consequently, we conclude that the district court had jurisdiction to revoke Schmidt's probation on October 3, 1995, pursuant to 18 U.S.C. § 3565(c).

B. *Jurisdiction to Revoke the Term of Supervised Release*

Schmidt also argues that no warrant or summons was issued prior to the expiration of his term of supervised release, and consequently the district court lacked jurisdiction to revoke his supervised release pursuant to 18 U.S.C. § 3583(i). Section 3583(i) permits

a court to revoke a term of supervised release after that term has expired only if, prior to the expiration, a warrant or summons has been issued on the basis of an alleged violation of a condition of the supervised release. 18 U.S.C. § 3583(i).[1] We reject Schmidt's argument because section 3583(i) did not apply to the revocation of supervised release in the present case.

Schmidt·was released from prison for the crime that resulted in the term of supervised release on July 25, 1992. Because Schmidt was subject to a three-year period of supervised release, he contends that the period of supervised release expired on July 25, 1995. This contention is incorrect.

On July 25, 1992, although Schmidt was released from jail in the Supervised Release Case, Schmidt was still in jail for the crime he committed in the Probation Case. In fact, Schmidt was not released from confinement in the Probation Case until April 20, 1993. Because "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days[,]" 18 U.S.C. § 3624(e), the term of supervised release in the Supervised Release Case did not begin to run until April 20, 1993. The three-year term of supervised release therefore was not due to expire until April 20, 1996.

Because the district court revoked Schmidt's term of supervised release on October 3, 1995, approximately six months *before* the term of supervised release was due to expire, the district court did not have to comply with the conditions of section 3583(i). As noted above, the conditions of section 3583(i) apply only when the revocation of supervised release occurs *after* the term of supervised release has expired.

---

1. 18 U.S.C. § 3583(i) may not apply to the present case because Schmidt was sentenced to his term of supervised release before section 3583(i) was adopted by Congress pursuant to § 110505 of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796. Nevertheless, as our analysis indicates, the requirements of section 3583(i) will have no effect on the outcome of this appeal because the revocation of the term of supervised release occurred before the term of supervised release expired. Moreover, even if the revocation occurred after the term of supervised release. expired, Ninth Circuit law prior to the adoption of section 3583(i) imposed the same requirements that 3583(i) sets forth. *See Neville,* 985 F.2d at 995–99. Section 3583(i) seems to have simply codified existing Ninth Circuit law. *See United States v. Morales,* 45 F.3d 693, 697, 700–01 (2nd Cir.1995).

Despite the rather clear language of section 3624(e), which provides that a term of supervised release *does not run* while a person is imprisoned for any crime, Schmidt contends that his term of supervised release nevertheless did run while he was serving time in the Probation Case. Schmidt argues that any time a person is on probation, a term of supervised release in another case must run concurrently, even if the person is also in jail. If this argument were valid, it would benefit Schmidt because he was both in jail and on probation in the Probation Case until he was released from jail in the Supervised Release Case. *See United States v. Adair*, 681 F.2d 1150, 1151 (9th Cir.1982) ("Where a sentencing order is silent on when the probationary term commences, there is a strong presumption that the term starts on the date sentence is imposed and runs concurrently with any period of imprisonment imposed on any remaining count or counts.").

Schmidt relies upon section 3624(e) to support his argument. That section provides, in pertinent part, that a term of supervised release "*runs concurrently* with any Federal, State, or local term of probation ... for another offense to which the person is subject or becomes subject during the term of supervised release." 18 U.S.C. § 3624(e) (emphasis added). In effect, Schmidt's argument is that this "runs concurrently" provision of § 3624(e) trumps the "does not run" provision of § 3624(e).

■ We reject this argument. The "runs concurrently" provision is contained in the sentence describing when a term of supervised released is to commence. The "runs concurrently" provision therefore simply reflects that a term of probation will not stop a term of supervised release from commencing. *See McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991) (stating that "statutory language must always be read in its proper context"). The "does not run" provision comes right after the "runs concurrently" provision and provides in unambiguous language that "[a] term of supervised release does not run during *any* period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime...." 18 U.S.C.

§ 3624(e) (emphasis added). Consequently, whenever a person is imprisoned for one crime, a term of supervised release for another crime does not run, regardless of any other circumstances. *Cf. Neville*, 985 F.2d at 995 (noting that "if the language of a statute is clear and there is no ambiguity, then there is no need to 'interpret' the language by resorting to the legislative history or other extrinsic aids") (quotations omitted).

■ Schmidt also contends that the rule of lenity supports his interpretation of section 3624(e). We reject this contention because "[t]he maxim that criminal statutes should be construed to favor lenient treatment of the defendant applies only when a statute is ambiguous." *Morales*, 45 F.3d at 701. *See United States v. Vallejo*, 69 F.3d 992, 995 (9th Cir.1995) (as amended) (per curiam), *cert. denied*, —— U.S. ——, 116 S.Ct. 1447, 134 L.Ed.2d 567 (1996).

Schmidt's term of supervised release was not due to expire until April 20, 1996. Because the district court revoked Schmidt's term of supervised release on October 3, 1995, approximately six months *before* the term of supervised release was due to expire, the district court did not have to comply with the conditions of section 3583(i). Therefore, the district court had jurisdiction to revoke Schmidt's term of supervised release even if no warrant or summons was issued in accordance with 18 U.S.C. § 3583(i).

## 2. *The Revocation Hearing*

Schmidt argues that the district court erred in finding that he failed to disclose requested financial records relating to Jack London Graphics. He also argues that the district court erred by abdicating its responsibility to the probation officer and by failing to consider the statutory factors set forth in 18 U.S.C. § 3553(a).

### A. *Financial Records*

■ A district court may revoke a defendant's term of supervised release if the court finds by a preponderance of the evidence that the defendant violated a term of supervised release. 18 U.S.C. § 3583(e)(3); *United States v. Lockard*, 910 F.2d 542, 543

(9th Cir.1990). A district court's decision to revoke a term of supervised release is reviewed for an abuse of discretion. *United States v. Laughlin,* 933 F.2d 786, 788 (9th Cir.1991). A district court abuses its discretion when the record contains no evidence to support its decision. *United States v. Schlette,* 842 F.2d 1574, 1577, *amended,* 854 F.2d 359 (9th Cir.1988).

█ There was evidence to support the district court's finding that Schmidt did not comply with the financial disclosure requirements of his supervised release. Schmidt never mentioned his work as a paralegal to the probation officer and did not disclose that he used the Jack London Graphics bank account for his personal finances. Schmidt also provided falsified documents so that his probation officer would believe that he earned a salary of approximately $2,000 per month for work as a manager at Jack London Graphics. Moreover, Schmidt refused to provide his telephone records and did not provide the probation officer with financial records relating to Jack London Graphics. Although Schmidt asserted that his boss at Jack London Graphics refused to turn over the requested Jack London Graphics' records on advice of counsel, this boss never appeared to support his assertion.

Based on the foregoing, we find that the district court did not err when it ruled that Schmidt violated the terms of his supervised release by failing to turn over requested financial records.

### B. *The Revocation Proceedings*

Schmidt argues that the district court erred by allowing the probation officer to determine whether Schmidt committed probation and supervised release violations. Schmidt also argues that the district judge did not consider the sentencing factors set forth in 18 U.S.C. § 3553(a).

█ Schmidt argues that the district judge abdicated his responsibility during the revocation proceedings by making the decision to revoke Schmidt's supervised release based solely on the probation officer's statement that he was not satisfied with Schmidt's efforts to comply with the terms of his super-

vised release. Trial courts, of course, may rely on unobjected to portions of a probation officer's reports, and may, in the court's discretion, adopt recommendations of such reports. *United States v. Hanoum,* 33 F.3d 1128, 1132 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1702, 131 L.Ed.2d 564 (1995).

The probation officer made this statement on October 3, 1995 during the sentencing phase of the revocation proceedings, almost six months after the district judge found that Schmidt had violated the terms of the supervised release. Moreover, the district judge considered all of the information discussed in section 2A, *supra.* Therefore, the district judge did not rely solely on the probation officer's conclusory statement in finding the supervised release violation.

█ As for the sentencing claim, the district judge sentenced Schmidt to a sentence of one year and one day for the supervised release violation. If this sentence had been within the guideline ranges and less than 24 months, the district judge would not have been required to state his reasons for the sentence imposed and would not have been required to discuss the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3553(c)(1), (2); *United States v. Cervantes-Valenzuela,* 931 F.2d 27, 29 (9th Cir.1991) (per curiam). The judge, however, exceeded the suggested sentencing guidelines. Therefore, the judge, "at the time of sentencing, [was required to] state in open court the reasons for its imposition of the particular sentence ... [and] the specific reason for the imposition of a sentence different from that described" in the guidelines. 18 U.S.C. § 3553(c)(2).

After reviewing the transcripts of the revocation hearing, we find that the district court considered the factors set forth in 18 U.S.C. § 3553(a) and stated its reasons for the sentence in open court. The court specifically found that "the guideline range is not relevant to this [case] because it is the pattern of refusal to comply which is at issue." In coming to this decision, the court considered the defendant's continued defiance and declared that "Mr. Schmidt is not amenable to supervision." In making these findings, the district court sufficiently considered the na-

ture and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; and available sentences and policy statements, as required by subsection (a) of section 3553.

### 3. *Additional Issues Raised in Schmidt's Pro Se Brief*

By order filed February 1, 1996, we allowed Schmidt to file a pro se opening brief as a supplement to the brief filed by his counsel. We now address the claims raised in the pro se brief.

#### A. *Due Process Claim*

Schmidt claims that he has been denied due process because the district court did not consider his pro se motions alleging various constitutional violations and challenging jurisdiction. There is no merit to this claim. The district court denied Schmidt's motions. Schmidt even acknowledges this in his pro se brief.

#### B. *"Found Guilty"*

■ Schmidt contends that he was not "found guilty" as that term is defined in 18 U.S.C. § 3673(1) because he pled not guilty and was then found guilty by a jury. There is no merit to this contention. Section 3673(1) provides that "the term 'found guilty' includes acceptance by a court of a plea of guilty or nolo contendere." There is nothing in the statute or legislative history which suggests that section 3673(1) is exclusive in its definition. Rather section 3673(1) supplements the obvious situation where a defendant is found guilty by a jury. *See Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978) (noting that a statute should not be interpreted in such a way as to lead to an absurd result that would frustrate the obvious purpose of the statute). Because Schmidt was "found guilty," he could be sentenced pursuant to 18 U.S.C. § 3551 and committed to the custody of the Bureau of Prisons pursuant to 18 U.S.C. § 3621.

#### C. *Jurisdictional Challenges*

Schmidt contends that he was not within the territorial, extraterritorial or interstate commerce jurisdiction of the district court. This Court has previously rejected these jurisdictional challenges, and we do so again for the same reasons. *See United States v. Schmidt,* No. 92–16445, 1993 WL 341033 (9th Cir. Sept.8, 1993); *United States v. Schmidt,* 947 F.2d 362 (9th Cir.1991).

### CONCLUSION

The district court had jurisdiction to revoke Schmidt's supervised release, and did not abuse its discretion in finding that Schmidt failed to make financial disclosures as required under the terms of his supervised release. Moreover, the district court considered the statutory factors in reaching its revocation decision and did not abdicate its power to make the revocation decision. Finally, all of the claims raised in Schmidt's pro se brief are without merit. The supervised release violation and sentence are affirmed.

AFFIRMED.