**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　　　*Plaintiff-Appellee,*

v.

RAUL ORTUÑO-HIGAREDA,
　　　　　　　　　*Defendant-Appellant.*

No. 04-10257

D.C. No.
CR-00-00786-1-
JMR

OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued and Submitted
February 7, 2005—San Francisco, California

Filed August 26, 2005

Before: J. Clifford Wallace, Johnnie B. Rawlinson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Wallace;
Partial Concurrence and Partial Dissent by Judge Rawlinson

11625

## COUNSEL

Francisco León, Tucson, Arizona, for defendant-appellant Raul Ortuño-Higareda.

Nathan D. Leonardo, Assistant United States Attorney, Tucson, Arizona, for plaintiff-appellee United States of America.

## OPINION

WALLACE, Senior Circuit Judge:

Raul Ortuño-Higareda (Ortuño) appeals from the district court's judgment revoking his term of supervised release and

sentencing him to a twenty-four month term of imprisonment. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. The questions before us are (1) whether the district court had jurisdiction to revoke Ortuño's supervised release term when revocation occurred before expiration of the term, and (2) whether supervised release was properly revoked when the government did not prove that Ortuño received notice of the supervised release condition that he was charged with violating.

I.

In 2000, Ortuño was charged in the United States District Court for the District of Arizona with illegally re-entering the United States after deportation, in violation of 8 U.S.C. § 1326(a). Ortuño pled guilty and the district court sentenced Ortuño to an eighteen-month term of imprisonment followed by thirty-six months of supervised release. The subsequently entered judgment of conviction required Ortuño to comply with eighteen "standard conditions" of supervision, and two "special conditions." The first standard condition (Standard Condition One) provided: "You shall not commit another federal, state, or local crime during the term of supervision." The first special condition (Special Condition One) provided: "If deported, you shall not re-enter the United States without legal authorization." The government concedes that Ortuño was not given written notice of the conditions of his supervised release.

Ortuño was later released from federal custody and deported. On May 1, 2003, Ortuño was apprehended by United States Border Patrol Agents near Otay Mesa, California. A criminal complaint was filed in the United States District Court for the Southern District of California charging Ortuño with a violation of 8 U.S.C. § 1326. Subsequently, a Petition on Supervised Release (Revocation Petition) and a Warrant for Arrest were filed in the District of Arizona. The Revocation Petition alleged the following violation:

**Allegation 1: Violation of Standard Condition 1: You shall not commit another federal, state, or local crime during the term of supervision. Grade B violation, §7B1.1(a)(2).**

On or about May 1, 2003, Ortuno-Higareda illegally entered and/or was found in the United States, in the Southern District of California, without legal authorization, after having been denied admission, excluded, deported or removed from the United States on August 13, 2001, via San Ysidro, California, in violation of 8 U.S.C. §1326(a), Deported Alien Found in the United States. This is evidenced by his arrest by a U.S. Border Patrol Agent on May 1, 2003.

At an evidentiary hearing on the Revocation Petition held before a magistrate judge, Border Patrol Agent George Allen was in possession of Ortuño's original "A-file," a file kept on an alien containing arrest reports, conviction documents, warrants of deportation, immigration judge orders, photographs, and fingerprints. Agent Allen testified about the A-file documents related to the alleged May 1, 2003 illegal re-entry. He also testified that, although he was not in possession of a record of a conviction for that illegal re-entry, he had been informed that afternoon by the San Diego Border Patrol Prosecution Unit that a judgment of conviction had been entered.

Probation Officer Assistant Beatriz Castillo testified that in immigration-related cases, individuals would be taken into custody immediately after sentencing. Once the term of imprisonment was served, the individual would usually be released to what was then the Immigration and Naturalization Service. Castillo explained, "[w]e never see them following their release from custody." She also testified that she had no information that the conditions of supervised release were discussed with Ortuño or that Ortuño received anything in writing regarding those conditions. She stated, however, that the

judge "usually advises" the defendant that he is bound by those conditions at the time of sentencing.

Ortuño's counsel argued that the government had not proved that Ortuño had violated Standard Condition One as alleged in the Revocation Petition, because there was no copy of the judgment of conviction for the 2003 illegal re-entry and Agent Allen's hearsay testimony that Ortuño had been convicted was insufficient. He also contended that Ortuño's supervised release should not be revoked because there was no evidence that Ortuño had been provided a written copy of the supervised release conditions.

In his Report and Recommendation (R&R), the magistrate judge concluded that the government had met its burden to prove by a preponderance of the evidence that Ortuño committed a federal criminal offense as alleged in the Revocation Petition, notwithstanding the absence of a copy of the judgment of conviction for the 2003 illegal re-entry charge. As for Ortuño's argument concerning the lack of written notice of the supervised release conditions, the magistrate judge reasoned:

> From the testimony of Beatriz Castillo, it would appear that the probation officer does not give the Defendant a written statement of his supervised release conditions in cases, such as this, where the defendant is deported immediately upon release from custody. This practice does not comply with the express requirement of 18 U.S.C. § 3583(f). Nonetheless, in this case it was a special condition of supervised release that, "if deported, you shall not re-enter the United States without legal authorization." The Defendant would have been verbally advised of this special condition by the sentencing judge. Defendant had actual notice that he was not to re-enter the United States illegally, and therefore the revocation based on that conduct is permissible.

*United States v. Ortega-Brito*, 311 F.3d 1136, 13138 [sic] (9th Cir. 2002).

The magistrate judge found that Ortuño (1) "violated his conditions of supervised release as alleged in the petition" and (2) "had actual notice that the conduct in issue constituted a violation of his condition of supervised release."

Ortuño raised two objections to the R&R: (1) Agent Allen's hearsay testimony was insufficient to prove that Ortuño was convicted of illegal re-entry and (2) there was no evidence that Ortuño received the proper notice of the supervised release conditions. Ortuño's counsel advised the court that he had requested a transcript of the sentencing hearing at which supervised release was imposed to determine whether Ortuño received oral notice at that time. He urged the district court to review the transcript upon arrival to determine whether "actual notice" of the supervised release conditions was provided, instead of relying, as the magistrate judge seemingly had, on the "practice" of judges to notify defendants orally of such conditions at sentencing. The district court entered an order adopting the R&R and making the same two findings that the magistrate judge made. Four days later, a transcript of the sentencing hearing was filed with the district court indicating that Ortuño had been advised of Special Condition One, but not Standard Condition One. Nevertheless, the district court subsequently entered a judgment revoking Ortuño's supervised release and sentenced him to a twenty-four-month term of imprisonment. This judgment was entered before Ortuño's supervised release term was scheduled to expire.

## II.

On appeal, Ortuño renews his argument that his supervised release should not have been revoked because (1) the government did not produce sufficient evidence that he violated Standard Condition One and (2) he did not receive the condi-

tions of supervised release in writing. In addition, he contends for the first time that under *United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004), the district court lacked jurisdiction to revoke his supervised release because the warrant pursuant to which he was arrested was not "supported by Oath or affirmation" as required by the Fourth Amendment's Warrant Clause. Because this latter challenge raises a jurisdictional issue, we address it first. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 995 n.12 (9th Cir. 2003) (en banc) (stating that "we are required to resolve [jurisdictional] questions first"), *cert. dismissed*, 540 U.S. 1098 (2004).

## A.

It is undisputed that the warrant which precipitated Ortuño's arrest was not "supported by Oath or affirmation." The question is whether this deficiency divested the district court of jurisdiction to revoke his supervised release. Although Ortuño did not raise this issue in the district court (*Vargas-Amaya* had not yet been decided), "we review questions of jurisdiction even if raised for the first time on appeal." *United States v. Powell*, 24 F.3d 28, 30 (9th Cir. 1994). "We review the district court's exercise of jurisdiction *de novo.*" *Id.*

In *Vargas-Amaya*, we interpreted 18 U.S.C. § 3583(i), which provides:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment . . . , extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

**[1]** We held that "a district court's jurisdiction to revoke supervised release can be extended beyond the term of supervision under § 3583(i), based upon a warrant issued during the term of supervision, only if the warrant was issued 'upon probable cause, supported by Oath or affirmation,' as required by the Fourth Amendment." *Vargas-Amaya*, 389 F.3d at 907.

**[2]** Here, unlike in *Vargas-Amaya*, the district court's jurisdiction was not premised upon section 3583(i) because Ortuño's supervised release was revoked *before* expiration of his supervised release term. *See United States v. Schmidt*, 99 F.3d 315, 318 (9th Cir. 1996) ("[T]he conditions of section 3583(i) apply only when the revocation of supervised release occurs *after* the term of supervised release has expired."), *overruled on other grounds by United States v. Palomba*, 182 F.3d 1121, 1123 (9th Cir. 1999). Since this case does not involve section 3583(i), *Vargas-Amaya*'s interpretation of that provision is irrelevant.

**[3]** In *Schmidt*, we explained that a district court has jurisdiction to revoke a supervised release term before expiration of that term "even if no warrant or summons was issued in accordance with 18 U.S.C. § 3583(i)." *Id.* at 319. The structure of the supervised release statute buttresses the conclusion we reached in *Schmidt*. 18 U.S.C. § 3583(e)(3) provides that the court may, after considering certain factors, "revoke a term of supervised release . . . if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of . . . supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release." The section 3583(e)(3) authority to revoke supervised release, unlike that in section 3583(i), is not conditioned upon the issuance of a warrant. This indicates that Congress intended to make the issuance of a valid warrant a jurisdictional prerequisite only in cases governed by section 3583(i), where revocation occurs after the conclusion of the supervised release term. Where revocation occurs before expiration of the term, section 3583(e)(3) governs and the district court will

have jurisdiction to revoke supervised release in the absence
of a warrant or even if a warrant is defective.

**[4]** We acknowledge that certain language in a *Vargas-Amaya* footnote could be read to suggest that the requirements
of the Warrant Clause apply even when an arrest occurs during the term of supervised release. *See Vargas-Amaya*, 389
F.3d at 905 n.2. Given our holding in *Schmidt* and the structure of the supervised release statute, we do not read this language to establish the proposition that noncompliance with
the Warrant Clause creates a jurisdictional defect where revocation occurs before expiration of the supervised release term.
Further, because we vacate Ortuño's supervised release on
other grounds as explained later, we need not decide whether
a violation of the Warrant Clause might provide other, nonjurisdictional grounds for challenging a revocation of supervised release. We hold only that because Ortuño's revocation
proceedings were completed before the conclusion of his
supervised release term, section 3583(e)(3) rather than section
3583(i) provided the revocation authority. Therefore, that
Ortuño was arrested pursuant to a warrant which was not supported by oath or affirmation did not deprive the district court
of jurisdiction to revoke his supervised release.

B.

With the jurisdiction issue settled, we address the merits of
Ortuño's challenges to the revocation of his supervised
release. "The district court's decision to revoke a term of
supervised release is reviewed for an abuse of discretion."
*United States v. Verduzco*, 330 F.3d 1182, 1184 (9th Cir.
2003). "We review a district court's application of the supervised release statute de novo. We review a district court's factual findings at the sentencing phase for clear error." *United
States v. Lomayaoma*, 86 F.3d 142, 146 (9th Cir. 1996) (citations omitted).

We first determine whether revocation of supervised
release was an abuse of discretion because Ortuño received no

notice, written or oral, that he was subject to Standard Condition One. *Cf. United States v. Foster*, 500 F.2d 1241, 1244 (9th Cir. 1974) (where defendant "was not informed in any way" that certain duties were conditions of his probation, his failure to comply with those duties could not "be a predicate for revoking his probation"). If so, we will not need to reach Ortuño's challenge to the sufficiency of the evidence.

**[5]** 18 U.S.C. § 3603 imposes a number of obligations on probation officers, including subsection 1 which provides in mandatory language that a probation officer shall

> instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions[.]

18 U.S.C. § 3603(1). This statement is clear and unambiguous and provides specific direction to probation officers. This statutory obligation is reinforced by 18 U.S.C. § 3583(f), which imposes a similarly clear obligation on district courts:

> The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

**[6]** The government concedes that Ortuño was not given written notice of his supervised release conditions. However, we have held that, "where a releasee received actual notice of the conditions of his supervised release," a failure to adhere to Congress' obvious intent that written notice be provided "will not automatically invalidate the revocation of . . . release based upon a violation of such conditions." *United States v. Ortega-Brito*, 311 F.3d 1136, 1138 (9th Cir. 2002); *see also*

*United States v. Tapia-Marquez*, 361 F.3d 535, 536 (9th Cir. 2004). "Therefore, we must determine whether [Ortuño] received actual notice of the conditions, the violations of which formed the basis for the revocation of his supervised release." *Ortega-Brito*, 311 F.3d at 1138.

Ordinarily, materials not before the district court are not considered in our review. Here, the transcript of the sentencing hearing at which supervised release was imposed was not filed in the district court when the district judge approved the R&R, in spite of Ortuño's urging that he delay his decision until it was prepared and filed. Nevertheless, the transcript was filed before the court entered its judgment. Under these circumstances, we conclude that we may consider the sentencing transcript in making our decision. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.' " (*quoting St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979))).

The transcript of the sentencing hearing states:

> THE COURT: . . . So the record can show that it's the judgment of the Court that the defendant is committed to the custody of the Bureau of Prisons for a period of 18 months, that he shall serve a 36 month term of supervised release with the standard conditions plus the special condition that the defendant is not to enter the United States without proper documentation.
>
> . . . .
>
> . . . . If you are deported, then it's up to you to try to get admitted legally into the country again.

MR. ORTUNO-HIGAREDA: Okay.

THE COURT: But for the — if you reenter the United States, you're going to be — within three years after you do the 18 months, you will be violating your conditions of probation, you will be brought before the Court for violation of supervised release, and you could do another three years for entering illegally.

MR. ORTUNO-HIGAREDA: Okay. Thank you, your Honor.

THE COURT: Do you understand that?

MR. ORTUNO-HIGAREDA: Yes.

**[7]** Thus, Ortuño was orally advised that he was subject to Special Condition One, which provided that he "shall not reenter the United States without legal authorization." However, the Revocation Petition did not charge him with a violation of that condition. Instead, it charged him with violating Standard Condition One, which provided that Ortuño "shall not commit another federal, state, or local crime during the term of supervision." Ortuño was not informed at the hearing that he was subject to this latter condition. Because the government did not prove that Ortuño received any notice, written or oral, that he would be subject to Standard Condition One, a violation of that condition could not serve as the basis for revocation of his supervised release.

**[8]** It is insufficient that Ortuño was verbally advised that he would violate a condition of his supervised release if he illegally re-entered the United States. As we stated in *Ortega-Brito*, the lack of written notice may be excused if a defendant received actual notice of a condition and "the revocation of his release [is] based upon a violation of *such condition*[ ]." *Id.* (emphasis added); *see also id.* (stating that "we must deter-

mine whether [the defendant] received actual notice of the *conditions, the violations of which formed the basis for the revocation of his supervised release*" (emphasis added)). In disregarding noncompliance with the statutory mandate, we did not go so far as to hold that actual notice of one condition may support revocation based on violation of a different condition. We now hold that the failure to provide the statutorily required written notice will be tolerated only when the government proves that the defendant received actual notice of the very condition that he is charged with violating. *See also United States v. Johnson*, 763 F. Supp. 900, 902 (W.D. Tex. 1991) (revoking supervised release even though defendant had not been provided written copy of conditions because the defendant was "*advised expressly by the Court at the time of sentencing of the specific condition of supervised release which the Government alleges, as ground for revocation of the Defendant's supervised release, the Defendant has violated*" (emphasis in original)). Since the Revocation Petition did not charge Ortuño with a violation of Special Condition One, his receipt of notice of that condition is irrelevant. Rather, the failure to give Ortuño notice of Standard Condition One is dispositive, and the court abused its discretion in revoking his supervised release.

The dissent states that "[a]lthough Ortega-Brito, like Ortuño, was not expressly advised that his supervised release was conditioned on his refraining from committing crimes, we nevertheless ruled that Ortega-Brito 'received actual notice' that 'he may not . . . commit any crimes.' " *Post* at 11643, *quoting Ortega-Brito*, 311 F.3d at 1139. But, as the dissent acknowledges, the defendant in *Ortega-Brito* had been advised that supervised release is "like a parole. If you do something wrong, you go back to jail." 311 F.3d at 1138. A fair reading of our opinion in *Ortega-Brito* makes clear that we relied upon this specific advisement in concluding that the defendant "received actual notice" that "he may not . . . commit any crimes." *Id.* at 1139. There was no similar advisement in this case. Thus, we do not agree that "[t]here is no princi-

pled basis upon which *Ortega-Brito* can be distinguished." *Post* at 11643.

One further issue merits discussion. The finding of the magistrate judge and district court that Ortuño received the required actual notice could only have been based on Castillo's testimony, because the transcript of the sentencing hearing at which supervised release was imposed was not before the magistrate judge when he issued the R&R or the district court when it adopted the R&R. Yet, all Castillo testified was that a sentencing judge "usually advises" the defendant of the conditions of supervised release at the time of sentencing.

**[9]** We are aware of no case holding that evidence that it is the "practice" of sentencing judges to advise defendants that they are subject to certain conditions is sufficient to establish that a particular defendant was in fact so advised. The statutes discussed earlier are clear and free of doubt as to their meaning. It is true that in *Ortega-Brito* we created our own exception to the statutes which has not been overruled by the Supreme Court and has not been made irrelevant by a congressional amendment. But this does not justify additional judicial tinkering with the statutes. We therefore hold that the evidence in this case regarding the "practice" of sentencing judges does not establish that Ortuño received notice of any conditions. We stress that the failure to adhere to the congressional mandate to provide written notice should be excused only when there is specific evidence that the defendant received actual notice of the condition, "the violation[ ] of which formed the basis for the revocation of his supervised release." *Ortega-Brito*, 311 F.3d at 1138.

In *Ortega-Brito*, we were "compelled to emphasize the importance of compliance with 18 U.S.C. §§ 3583(f) and 3603(1)." *Id.* at 1139. Although we "encourage[d] the establishment of procedures that would ensure compliance with the letter, as well as the purpose, of the statutes," *id.*, it appears that our suggestion has gone unheeded. We trust that the gov-

ernment will not continue to deport individuals following terms of imprisonment without providing them with a written copy of their supervised release conditions, as required by statute. We also encourage the district courts to direct the probation officers to provide the written statement mandated by 18 U.S.C. § 3583(f).

**[10]** The district court's judgment revoking Ortuño's term of supervised release and sentencing him to a twenty-four month term of imprisonment is **VACATED**.

RAWLINSON, Circuit Judge, concurring in part and dissenting in part:

I concur in that portion of the opinion concluding that the district court had jurisdiction to revoke the supervised release term. I respectfully dissent, however, from that portion of the opinion concluding that Ortuño-Higareda was not adequately apprised of the standard condition that he "not commit another federal, state or local crime." As the majority opinion acknowledges, we have ruled that notice of a supervised release condition is adequate if the defendant received actual notice of that condition. *See United States v. Ortega-Brito*, 311 F.3d 1136, 1138 (9th Cir. 2002).

As the majority opinion noted, at the time of sentencing the district court advised the defendant of the imposition of

> . . . supervised release with the standard conditions plus the special condition that the defendant is not to enter the United States without proper documentation.
>
> . . .
>
> . . . if you reenter the United States, you're going to be — within three years . . . you will be violating

your conditions of probation, you will be brought
before the Court for violation of supervised release,
and you could do another three yeas for entering ille-
gally.

The majority opinion proposes to vacate the revocation
because Ortuño was advised of Special Condition One, that he
not "re-enter the United States without legal authorization,"
but was not advised of Standard Condition One, that he "not
commit another federal, state or local crime." The majority
opinion reasons that because the revocation petition charged
a violation of Standard Condition One and not Special Condi-
tion One, a violation of Standard Condition One "could not
serve as the basis for revocation of his supervised release."
However, I am not convinced that invalidation of the revoca-
tion is consistent with *Ortega-Brito*.

The supervised release advisement in *Ortega-Brito* was not
markedly different from the advisement in this case. In
*Ortega-Brito*, the releasee was advised that supervised release
was "like a parole. If you do something wrong, you go back
to jail." *Ortega-Brito*, 311 F.3d at 1138. The district court
judge informed the releasee of the conditions of supervised
release by stating:

> The usual terms and conditions will apply, together
> with the special terms and conditions: that under no
> circumstances is he ever again, as long as he lives,
> to reenter or attempt to reenter the United States
> without being properly and legally documented to do
> so and having legal permission from the United
> States government to do so.

*Id.* at 1139 (alteration omitted).

We interpreted the advisement given by the district court as
giving Ortega-Brito

> *actual notice* that his release was conditioned upon compliance with at least two restrictions: he may not (1) commit any crimes, and (2) reenter the United States without proper documentation.

*Id.* (emphasis added).

The majority opinion concludes that "[i]t is insufficient that Ortuño was verbally advised that he would violate a condition of his supervised release if he illegally re-entered the United States." Yet that is precisely what we approved in *Ortega-Brito*. Although, Ortega-Brito, like Ortuño, was not expressly advised that his supervised release was conditioned on his refraining from committing crimes, we nevertheless ruled that Ortega-Brito "received actual notice" that "he may not . . . commit any crimes." *Id.* There is no principled basis upon which *Ortega-Brito* can be distinguished. That is especially true in this case, because the petition to revoke supervised release, although referencing Standard Condition One (commission of a crime), described the violation as the illegal re-entry that the district court expressly advised Ortuño would constitute a violation. If the advisement was adequate in *Ortega-Brito* to convey actual notice, it was equally adequate in this case. Because I am convinced that *Ortega-Brito* controls, I would affirm the revocation. I respectfully dissent from that portion of the opinion concluding otherwise.