# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

RAUL ORTUÑO-HIGAREDA,
            *Defendant-Appellant.*

No. 04-10257

D.C. No.
CR-00-00786-
1-JMR

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued and Submitted
February 7, 2005—San Francisco, California

Filed June 8, 2006

Before: J. Clifford Wallace, Johnnie B. Rawlinson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Rawlinson;
Dissent by Judge Wallace

6335

**COUNSEL**

Francisco León, Tucson, Arizona, for defendant-appellant
Raul Ortuño-Higareda.

Nathan D. Leonardo, Assistant United States Attorney, Tuc-
son, Arizona, for plaintiff-appellee United States of America.

**ORDER**

The petition for panel rehearing is GRANTED. The opin-
ion and concurrence/dissent filed on August 26, 2005, are

withdrawn. The superseding opinion and dissent will be filed concurrently with this order. Further petitions for rehearing or for rehearing en banc may be filed.

## OPINION

RAWLINSON, Circuit Judge:

Raul Ortuño-Higareda ("Ortuño") challenges the revocation of his supervised release. Because we hold that the district court had jurisdiction to revoke Ortuño's supervised release, that there was sufficient evidence to prove that Ortuño violated the conditions of his supervised release, and that he had imputed knowledge of those conditions, we AFFIRM.

## I

### *BACKGROUND*

Ortuño was convicted in the United States District Court for the District of Arizona of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326(a). He was sentenced to an eighteen-month term of imprisonment followed by thirty-six months of supervised release. Condition one of Ortuño's supervised release stated: "You shall not commit another federal, state, or local crime during the term of supervision." Ortuño was also required to comply with two special conditions, the first of which stated: "If deported, you shall not re-enter the United States without legal authorization."

At Ortuño's sentencing hearing on August 4, 2000, the court specifically informed Ortuño that if he reentered the United States within three years after serving his sentence, he would be in violation of the conditions of his release. The court further noted that such a violation could result in

Ortuño's imprisonment for another three years. When asked if he understood, Ortuño answered, "[y]es."

Ortuño was released from federal custody on August 13, 2001. He was deported that same day. In such a case, the inmate is released directly into the custody of the Department of Immigration and Naturalization Services (INS).[1] No probation officer meets with the inmate following release.

On May 1, 2003, Ortuño was apprehended by the Border Patrol at or near Jote Mesa, California and arrested for re-entering the country without authorization. A criminal complaint was filed against Ortuño in the United States District Court for the Southern District of California. Subsequently, a Petition to Revoke Supervised Release and a Warrant for Arrest were filed in the District of Arizona. The Petition to Revoke Supervised Release charged that Ortuño violated the release conditions imposed when he was sentenced.

An evidentiary hearing on the petition to revoke supervised release was held before a magistrate judge. At the hearing, the government presented the testimony of Border Patrol Agent George Allen. During his testimony, Agent Allen was in possession of Ortuño's original A-file.[2] Contained in that A-file and admitted into evidence was the arrest report, or Record of Deportable/Inadmissible Alien, for Ortuño, dated May 1, 2003. According to Agent Allen's testimony, the report indicated that Ortuño's entry status was without authorization and that his last known entry into the United States occurred on May 1, 2003, at or near Jote Mesa, California. The report also contained a statement describing Ortuño's apprehension by the Border Patrol.

---

[1]"The INS is now called the Bureau of Citizenship and Immigration Services." *United States v. Karaouni*, 379 F.3d 1139, 1140 n.1 (9th Cir. 2004).

[2]The A-file is the file kept for an alien, containing arrest reports, conviction documents, warrants of deportation, immigration judge orders, photographs, and fingerprints.

Another document in the A-file was the criminal complaint filed in the United States District Court for the Southern District of California. Agent Allen testified that the complaint contained a similar description of Ortuño's apprehension. Finally, the A-file contained the results of a fingerprint examination. The results reflected a match between the fingerprints taken from Ortuño and fingerprints previously lodged in Ortuño's A-file.[3]

On cross-examination, counsel for Ortuño asked Agent Allen whether there was any record of a conviction for the May 1, 2003 illegal re-entry charge. Agent Allen testified that he confirmed telephonically that afternoon that there was a conviction, but that the judgment was not yet in the A-file. Agent Allen clarified that a copy of the judgment would ordinarily not be placed in the A-file until Ortuño was deported. On re-direct examination, Agent Allen explained that earlier that afternoon, he confirmed with the San Diego Border Patrol Prosecution Unit that judgment of conviction was entered on August 29, 2003.

Ortuño moved to dismiss the Petition to Revoke on the bases that: 1) the government failed to present sufficient evidence that Ortuño violated the conditions of his supervised release absent proof of a conviction; and 2) Ortuño was never provided a written copy of the supervised release conditions. The magistrate judge issued a Report and Recommendation (R&R) finding that Ortuño violated the conditions of his supervised release and was given actual notice of the condition that he not re-enter the country illegally. The district court adopted the R&R, revoked Ortuño's supervised release, and sentenced him to a twenty-four month term of imprisonment.

---

[3]Ortuño does not dispute that these documents were admitted into evidence.

On appeal, Ortuño renews his argument that his supervised release should not have been revoked because: 1) the government did not produce sufficient evidence that he violated Standard Condition One; and 2) he did not receive the conditions of supervised release in writing. In addition, he contends for the first time that, under *United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004), the district court lacked jurisdiction to revoke his supervised release because the warrant pursuant to which he was arrested was not "supported by Oath or affirmation" as required by the Fourth Amendment's Warrant Clause.

## II

## *STANDARDS OF REVIEW*

"The district court's decision to revoke a term of supervised release is reviewed for an abuse of discretion." *United States v. Verduzco*, 330 F.3d 1182, 1184 (9th Cir. 2003) (citation omitted). Whether a defendant received due process at a proceeding to revoke supervised release is reviewed *de novo*. *United States v. Havier*, 155 F.3d 1090, 1092 (9th Cir. 1998). "We review the district court's exercise of jurisdiction *de novo*." *United States v. Powell*, 24 F.3d 28, 30 (9th Cir. 1994) (citation omitted).

## III

## *DISCUSSION*

### A.   The district court had jurisdiction to revoke Ortuño's supervised release.

We address Ortuño's jurisdictional argument first. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 995 n.12 (9th Cir. 2003) (en banc) (stating that "we are required to resolve [jurisdictional] questions first"), *cert. dismissed*, 540 U.S. 1098 (2004).

**[1]** It is undisputed that the warrant which precipitated Ortuño's arrest was not "supported by Oath or affirmation." The question is whether this deficiency divested the district court of jurisdiction to revoke his supervised release. Although Ortuño did not raise this issue in the district court (*Vargas-Amaya* had not yet been decided), "we review questions of jurisdiction even if raised for the first time on appeal." *Powell*, 24 F.3d at 30.

In *Vargas-Amaya*, we interpreted 18 U.S.C. § 3583(i), which provides:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment . . . , extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

**[2]** We held that "a district court's jurisdiction to revoke supervised release can be extended beyond the term of supervision under § 3583(i), based upon a warrant issued during the term of supervision, only if the warrant was issued 'upon probable cause, supported by Oath or affirmation,' as required by the Fourth Amendment." *Vargas-Amaya*, 389 F.3d at 907.

**[3]** Here, unlike in *Vargas-Amaya*, the district court's jurisdiction was not premised upon section 3583(i) because Ortuño's supervised release was revoked *before* expiration of his supervised release term. *See United States v. Schmidt*, 99 F.3d 315, 318 (9th Cir. 1996) ("[T]he conditions of section 3583(i) apply only when the revocation of supervised release occurs *after* the term of supervised release has expired."), *overruling on other grounds recognized in United States v. Palomba*, 182 F.3d 1121, 1123 (9th Cir. 1999). Since this

case does not involve section 3583(i), *Vargas-Amaya*'s interpretation of that provision is irrelevant.

**[4]** In *Schmidt*, we explained that a district court has jurisdiction to revoke a supervised release term before expiration of that term "even if no warrant or summons was issued in accordance with 18 U.S.C. § 3583(i)." *Id*. at 319. The structure of the supervised release statute buttresses the conclusion we reached in *Schmidt*. 18 U.S.C. § 3583(e)(3) provides that the court may, after considering certain factors, "revoke a term of supervised release . . . if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of . . . supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release." The section 3583(e)(3) authority to revoke supervised release, unlike that in section 3583(i), is not conditioned upon the issuance of a warrant. This indicates that Congress intended to make the issuance of a valid warrant a jurisdictional prerequisite only in cases governed by section 3583(i), where revocation occurs after the conclusion of the supervised release term. Where revocation occurs before expiration of the term, section 3583(e)(3) governs and the district court will have jurisdiction to revoke supervised release in the absence of a warrant or even if a warrant is defective.

We acknowledge that certain language in a *Vargas-Amaya* footnote could be read to suggest that the requirements of the Warrant Clause apply even when an arrest occurs during the term of supervised release. *See Vargas-Amaya*, 389 F.3d at 905 n.2. However, given our holding in *Schmidt* and the structure of the supervised release statute, we do not read this language to establish the proposition that noncompliance with the Warrant Clause creates a jurisdictional defect where revocation occurs before expiration of the supervised release term. Therefore, that Ortuño was arrested pursuant to a warrant which was not supported by oath or affirmation did not deprive the district court of jurisdiction to revoke his supervised release.

With the jurisdiction issue settled, we address the merits of Ortuño's challenges to the revocation of his supervised release.

## B.  Ortuño had imputed knowledge of the standard release condition that he not commit a crime.

[5] Ortuño asserts that because he was never provided with a written statement of the conditions of his supervised release as required by 18 U.S.C. §§ 3583(f) and 3603(1), the revocation cannot stand. Initially, the parties and the court focused our attention on whether Ortuño was given actual notice of the supervised release condition. *See United States v. Ortega-Brito*, 311 F.3d 1136, 1138 (9th Cir. 2002) (examining whether the supervisee received actual notice of the supervised release conditions). Following publication of the panel's now-withdrawn opinion vacating the revocation on the basis that Ortuño did not receive actual notice of the standard condition that he commit no further crimes, *see United States v. Ortuño-Higareda*, 421 F.3d 917, 923-25 (9th Cir. 2005), the government filed a Petition for Rehearing. In its petition, the government—for the first time—called the panel's attention to a line of authority imputing knowledge to supervisees of the requirements to refrain from future criminal conduct. *See, e.g.*, *United States v. Dane*, 570 F.2d 840 (9th Cir. 1977), where we held that:

> Courts have sustained the revocation of probation . . . where the defendant was not aware of the conditions. In such a case, *knowledge of the criminal law is imputed to the probationer, as is an understanding that violation of the law will lead to the revocation of probation*.

*Id*. at 843-44 (citation omitted) (emphasis added); *see also United States v. Simmons*, 812 F.2d 561, 565 (9th Cir. 1987) (explaining that "[a] court . . . may impute knowledge [of a probation condition] when the violation is a criminal act")

(citation omitted); *United States v. Laughlin*, 933 F.2d 786, 790 (9th Cir. 1991) (noting that "a court may impute notice and knowledge of conditions when their violation entails a criminal act. [The defendant] is thus presumed to have notice at least that his [criminal] activities violated probation.") (citation omitted).[4]

Ordinarily, we would not consider contentions that went unmentioned during a full round of briefing and oral argument. *See Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1397 (9th Cir. 1988). However, we are now cognizant that our withdrawn panel opinion was in direct conflict with prior precedent. *Compare Ortuño-Higareda*, 421 F.3d at 923-24 (requiring actual notice of the standard condition that the releasee refrain from committing a crime), *with Simmons*, 812 F.2d at 565 ("[W]hen . . . the proscribed acts are *not* criminal, due process requires that the probationer receive actual notice.") (emphasis added). To avoid an intracircuit conflict, and after considering the post-argument filings of the parties, we elect to consider the government's argument in this unique circumstance. *See Escobar-Ruiz v. INS*, 813 F.2d 283, 286 (9th Cir. 1987) (allowing the government to make a new argument when to do otherwise would "allow[ ] an improper [statutory] interpretation . . . to stand as the controlling precedent [and] [ ] constitute a disservice to all parties concerned.)."

Standard Condition 1 provided:

> You shall not commit another federal, state or local crime during the term of supervision.

**[6]** Standard Condition 1 falls squarely within our precedent that imputes "an understanding that violation of the law

---

[4] The fact that these cases address probation rather than supervised release does not affect our analysis. *See United States v. Hall*, 419 F.3d 980, 985 n.4 (9th Cir. 2005).

will lead to the revocation of probation." *Dane*, 570 F.2d at 844. Our precedent forecloses any argument that Ortuño could not be held accountable for committing the crime of illegal re-entry and/or being found in the United States after deported, regardless of whether he received actual notice of those proscriptions. Accordingly, revocation of Ortuño's supervised release for violating Standard Condition 1 was proper.

### C. There is sufficient evidence in the record to support the district court's conclusion that Ortuño violated the conditions of his supervised release.

Ortuño contends that there was insufficient evidence presented to establish that he was convicted of a federal crime because the only evidence of his conviction was the hearsay testimony of Agent Allen. Ortuño postulates that absent proof of a conviction, insufficient evidence exists to support revocation of his supervised release. Ortuño also argues that the district court's reliance on the hearsay testimony of Agent Allen violated his due process rights.

**[7]** A court may revoke a term of supervised release "if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . ." 18 U.S.C. § 3583(e)(3). The first standard condition of Ortuño's supervised release was that he "not commit another federal, state or local crime during the term of supervision." In addition, Ortuño was subject to a special condition that "[i]f deported, [he] shall not re-enter the United States without legal authorization." There was no condition imposed that Ortuño not be *convicted* of another crime.

The R&R, which the district court adopted, seemed to rely, at least in part, on Agent Allen's hearsay testimony that he telephonically confirmed Ortuño's conviction. However, the R&R was also grounded on the documents contained in

Ortuño's A-file.[5] *Id.* Thus, although the R&R stated that "the certified copy of the judgment is the preferable evidence," it nonetheless found that "the Government met its burden, by a preponderance of the evidence, that Ortuño *committed* a federal criminal offense while on supervised release." *Id.* (emphasis added).

[8] Of course, a certified conviction would be the best evidence that Ortuño committed the crime of re-entry without authorization.[6] However, other documents in Ortuño's A-file, presented through the testimony of Agent Allen, established by a preponderance of the evidence that Ortuño illegally re-entered the United States after being deported and thus *committed* a federal crime. *See* 8 U.S.C. § 1326(a). These documents consisted of the arrest report for Ortuño's illegal re-entry, the criminal complaint filed for that offense, and the results of a fingerprint examination indicating that Ortuño was the same person who was sentenced in 2000 and deported in 2001. Documents in an A-file are admissible under the public records exception to the hearsay rule. *See United States v. Hernandez-Herrera*, 273 F.3d 1213, 1217-18 (9th Cir. 2001). Thus, no due process violation occurred, and the district court acted within its discretion when it revoked Ortuño's supervised release.

---

[5]Ortuño does not assert that the R&R, as adopted by the district court, failed to adequately identify the basis on which the court resolved the dispute as to the sufficiency of the evidence; thus, our decision in *United States v. Sesma-Hernandez* is inapposite. 253 F.3d 403, 405-06 (9th Cir. 2001) (en banc) (holding that due process requires that when a defendant disputes the evidence relied upon by the government to revoke a term of supervised release, "the district court must make sufficient findings on the record to identify the violation and the evidence relied upon to establish it.").

[6]It is also true that the government could have easily confirmed that Ortuño was convicted. However, the government did not seek to rely on Ortuño's conviction; rather, it was Ortuño who elicited the hearsay testimony about the conviction and then complained that there was no record of it.

# IV

## *CONCLUSION*

The district court had jurisdiction to conduct the proceedings in this case. Notice was imputed to Ortuño that if he re-entered or was found in the United States after deportation, he would be in violation of his supervised release condition that he refrain from committing further crimes. There was sufficient evidence in the record to support the district court's finding that Ortuño violated the conditions of his supervised release.

**AFFIRMED.**

---

WALLACE, Circuit Judge, dissenting:

The government was obviously upset by our earlier opinion in this case, *United States v. Ortuño-Higareda*, 421 F.3d 917 (9th Cir. 2005), and immediately began casting its net for a different and more plausible argument. The government's brand new argument, advanced for the first time in its petition for rehearing, has now been accepted by a majority of this panel. I must respectfully dissent. I would not entertain the government's argument, as it is both waived and without merit.

As the majority properly states, we normally do not consider contentions that went unmentioned during the full round of briefing and oral argument, and these arguments are deemed waived. *See, e.g., Squaw Valley Development Co. v. Goldberg*, 395 F.3d 1062, 1063 (9th Cir. 2005) (rejecting argument "because it is made for the first time in the petition for rehearing"); *Picazo v. Alameida*, 366 F.3d 971, 971-72 (9th Cir. 2004) (refusing to consider argument on petition for rehearing where issue had been raised "at no point in th[e] lit-

igation"); *Talk of the Town v. Dep't of Finance and Business Servs.*, 353 F.3d 650, 650 (9th Cir. 2003) (refusing to consider argument raised on petition for rehearing "for the first time ever").

In *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1397 (9th Cir. 1988), we discussed a narrow exception to the general rule of waiver for cases involving "extraordinary circumstances," where the issue involved is "sufficiently urgent." *Id.* at 1398. The majority contends that we should jettison the important tenet of waiver because "our withdrawn panel opinion was in direct conflict with prior precedent." The majority relies primarily on three cases: *United States v. Laughlin*, 933 F.2d 786 (9th Cir. 1991); *United States v. Simmons*, 812 F.2d 561 (9th Cir. 1987); and *United States v. Dane*, 570 F.2d 840 (9th Cir. 1977).

These three cases, however, do not conflict with our original opinion. None of the cases arose under the statutory regime that is now in place, and even if they had, none of them rule on the issue that we decided in our withdrawn *Ortuño-Higareda* opinion. In *Dane*, the then-statute was in fact satisfied. The probation officer had provided a written form describing the conditions of probation, which Dane had signed. In addition, the probation officer explained the significance of the form to Dane at the time Dane left prison. 570 F.2d at 842-43. It is clear that the question of the statutory requirements was never raised and, indeed, had it been raised, the requirements would have been satisfied. The issue of whether the statute precluded any further analysis was simply not before the court.

Similarly, in *Simmons*, there is no indication that the statutory issue was raised. Thus, there can be no conflict with our withdrawn opinion.

Finally, our decision in *Laughlin* explicitly leaves open the very question that was decided in our withdrawn opinion.

Laughlin "object[ed] that his probation officer failed to perform her or his duty under 18 U.S.C. § 3655 to remind him of these conditions. Section 3655, however, was repealed effective November 1, 1987—more than two years before Laughlin's probation commenced. *We thus need not decide whether a violation of this statute's provision could warrant a reinstatement of probation*." *Laughlin*, 933 F.2d at 790 (emphasis added). It is clear that our decision in *Laughlin* leaves open the very question that was decided in our withdrawn opinion.

Thus, contrary to the majority's contention that our withdrawn opinion was in "direct conflict with our prior precedent," the opposite is true. The issue was never raised except in *Laughlin*, where it was specifically left open, and was not addressed again as being dispositive to the outcome of an appeal until our withdrawn opinion.

This brings me to our more recent case of *United States v. Ortega-Brito*, 311 F.3d 1136 (9th Cir. 2002). There, we specifically criticized the failure to comply with 18 U.S.C. §§ 3583(f) and 3603(1). We pointed out that "the obligations of the district courts and probation officers under th[ese] statutes are specific . . . ." *Id.* at 1139. However, in that case we held that the specific term for which supervised release was being challenged was in fact provided orally to the defendant. Thus, we excused on our own what is otherwise an absolute statutory mandate.

How does *Ortega-Brito* differ from the case before us? As is clear from our withdrawn opinion, the specific term of supervised release that Ortuño-Higareda was accused of violating was *not* provided to him, orally or in writing, at any time or by anyone. This case is factually distinct from *Ortega-Brito* and all of our prior cases, and presents this specific statutory claim for the first time. We answered the question in our withdrawn opinion.

It seems to me that not only was the government demonstrably tardy, but it was also wrong. While the majority has accepted its obviously flawed argument and rejected our ordinary waiver doctrines, I cannot. The government's effort to demonstrate a conflict that does not exist and its renewed effort to win a point that it properly lost before will apparently carry the day. The government, apparently, will be allowed to continue its unfortunate practice of disregarding statutory mandates and putting its prosecution practices above the will of Congress.

For the reasons stated by the withdrawn majority opinion, I cannot join the present majority. The obligations imposed by the United States Congress in 18 U.S.C. §§ 3603 and 3583 are direct and specific. They are binding upon the probation officers, the district court, and certainly this court. That we have chosen to disregard them in some cases does not indicate that we should disregard them in all cases. Perhaps it is time for our court to look carefully at these cases and to conclude that these statutes actually mean what they say. We have, in my judgment, an obligation to enforce them as written, whether we agree that Congress has adopted a good policy or not.

Acceptance of my position, of course, does not leave the government without the ability to enforce the law. The government contends that Ortuño-Higareda has violated the law. It need not attempt to squeeze this alleged crime into a violation of supervised release. The government is free to indict Ortuño-Higareda on the new crime and to present evidence of the violation. Because of its own failure to follow the statutory mandate, the government's decision to shoehorn this alleged crime into a supervised release violation is unfortunate. That the majority allows the government to do so is even more regrettable.

For the reasons stated above, I would not withdraw our prior opinion. For the reasons stated in the prior majority

opinion, *see Ortuño-Higareda*, 421 F.3d at 922-25, I dissent from the majority disposition.